# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00369-CV

**Appellant, Anderson Mill Municipal Utility District//Cross Appellants,
John C. Robbins and Theresa M. Robbins**

**v.**

**Appellees, John C. Robbins and Theresa M. Robbins//Cross-Appellee,
Anderson Mill Municipal Utility District**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 01-535-C368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## O P I N I O N

This appeal arises from an Anderson Mill neighborhood controversy regarding John and Theresa Robbinses' parking of a thirty-foot travel trailer at their residence and constructing of a fourteen-foot tall trailer-port to house it. The Anderson Mill Municipal Utility District obtained a judgment enforcing restrictive covenants to bar the Robbinses' actions, but the district court declined to award attorney's fees to the District. On appeal, the parties' dispute centers on whether the district court was required to award the District its attorney's fees.

In its sole issue, the District argues that section 54.237 of the water code made such an award mandatory. *See* Tex. Water Code Ann. § 54.237 (West 2002). While the Robbinses concede that section 54.237 is a mandatory attorney's fee statute, they respond with various grounds they contend could support the judgment. They also bring a four-issue cross-appeal attacking the

District's right to relief under section 54.237 and, to the extent it is based on that claim, the judgment enforcing the restrictive covenants. Under section 54.237, we are required to reverse and render judgment awarding the District's attorney's fees and otherwise affirm the judgment.

## BACKGROUND

In 1974, Anderson Mill Joint Venture, the developer of Village Two at Anderson Mill, a subdivision in Williamson County, imposed and recorded deed restrictions and restrictive covenants upon properties in the subdivision. There are three sections of the restrictive covenants that are at issue in this case:

- Section A-2, entitled "Architectural Control," requires prior approval, by an "architectural control" committee, of any plans to construct, place or alter any building on a lot. However, such approval is not required, and compliance with the related covenants is deemed, if the committee or its designated representatives "fails to approve or disapprove within 30 days after plans and specifications have been submitted to it, or in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof."

- Section A-4 states that "No building shall be located on any lot nearer than 5 feet to the interior lot line . . . ."

- Section A-9, titled "Temporary Structures or Emplacements" prohibits the "structure or placement of a temporary character, mobile home, trailer, . . . that are larger than 8 feet by 10 feet in width and length and 8 feet high [from being] erected, placed, driven, altered or permitted to remain on any lot at any time, either temporary or permanent, without the prior written consent of the Architectural Control Committee."

It is undisputed that these covenants ran with the land.

In 1994, the Robbinses purchased a home on Split Rail Parkway in Anderson Mill. A primary theme of the Robbinses at trial was that, notwithstanding the restrictive covenants,

2

Anderson Mill had been allowed to become an "outdoor-friendly area" where recreational vehicles, campers, boats, and structures to house them were commonplace. According to the Robbinses, before they purchased their home in Anderson Mill, they drove through the neighborhood and ascertained that it was an "outdoor-friendly area" where many residents kept boats, trailers, and recreational vehicles parked in driveways. There was evidence that, in the years that followed, the Robbinses had—without resistance from the District or homeowner's association—kept trailers or other recreational vehicles of varying sizes at their residence and had built a second driveway to accommodate these vehicles.

In April 2001, the Robbinses purchased a thirty-foot travel trailer for approximately $31,000. They parked the trailer in their residence driveway and began constructing a fourteen-foot tall metal-framed structure to house the trailer. These actions evidently alarmed some area residents. Shortly after construction began, an anonymous flyer entitled "URGENT MESSAGE" was circulated to neighborhood residents complaining about the size of the trailer-port construction. Having learned of the controversy, the District's general manager, Mike Bamer, went to the Robbinses' home and urged them to stop construction because the trailer-port violated deed restrictions. The District followed up with a letter to the Robbinses asking them to attend its next board meeting on April 25. At the meeting, the District's board stated that the trailer-port violated deed restrictions. The Robbinses agreed to remove the trailer-port, and subsequently did so. However, their large travel trailer remained in their driveway.

In May, the Anderson Mill Neighborhood Association sent a letter to the Robbinses stating that parking the trailer in the driveway was in violation of deed restrictions, and if the

3

violation was not remedied, the case would be referred to the District for further action. In July, the Association sent an e-mail to Bamer, alleging that the Robbinses had violated deed restrictions and stating that it believed the violation, if allowed to continue, would "have a negative impact on the property values in that area of the District." A few days later, Bamer sent a letter to the Robbinses notifying them that the Association had filed a complaint with the District concerning the parking of a travel trailer on the Robbinses' property. The letter explains that the Association "contend[s] that these alleged violations reduce property values." The Robbinses were summoned to the July 19 District board meeting, where "the Board of Directors will determine whether the alleged violations reduce property values in the area."

Having previously accommodated the District's demands by removing their trailer-port, this time the Robbinses stood firm in their position. At the meeting, they advised the board that they would refuse to remove the travel trailer from their driveway. Also, the Robbinses claim that, by this time, they had re-initiated construction of the trailer-port. They reasoned that if they were going to have to defend a lawsuit to keep their travel trailer, they might as well also defend their right to construct the trailer-port in which they desired to house the trailer. The Robbinses allege that the trailer-port construction was completed prior to the District's August meeting.

As completed, the trailer-port was fourteen feet tall. It extended to within three inches of neighbor Pascual Marquez's property line. The travel trailer and trailer-port blocked the view from one of the bedrooms in Marquez's home, and bright lights on the trailer-port illuminated his bedroom.

4

On September 19, 2001, the District, the Anderson Mill Neighborhood Association, and neighborhood residents Pascual Marquez, Nathan and Shawna Pitts, Robert William Rupe, and Ina Kakeen Tresca filed suit against the Robbinses seeking a declaration that the Robbinses had breached restrictive covenants and injunctive relief requiring them to remove the trailer-port and trailer, and attorney's fees and costs. All plaintiffs other than the District and Marquez ultimately withdrew from the case. The district court submitted only the following issues to the jury: (1) whether the District or Marquez had waived their rights to enforce the restrictive covenants at issue; (2) the amount of attorney's fees reasonably and necessarily incurred by "Anderson Mill Municipal Utility District and Pascual Marquez"; and (3) the amount of attorney's fees reasonably and necessarily incurred by the Robbinses. The jury found that neither the District nor Marquez had waived their rights to enforce any of the restrictive covenants. It also awarded $35,000 in attorney's fees to the District and Marquez for their trial work, but did not award them appellate attorney's fees. The district court rendered final judgment (1) declaring that the Robbinses' trailer-port and trailer violated the deed restrictions; (2) declaring that the District and Marquez had not waived their rights to enforce the deed restrictions; (3) requiring the Robbinses to remove the trailer-port and trailer within 30 days and enjoining their placement on the property in the future; but (4) ordering each party to bear its own attorney's fees and costs. This appeal followed.

## DISCUSSION

In its sole issue, the District contends that the district court erred in refusing to award its attorney's fees. It points to section 54.237 of the water code, which provides:

(a) As used in this section, "restriction" means a limitation on the use of real property that is established or incorporated in properly recorded covenants, property restrictions, plats, plans, deeds, or other instruments affecting real property in a district and that has not been abandoned, waived, or properly rescinded.

(b) A [municipal utility] district may take all actions necessary to enforce a restriction, including the initiation, defense, or intervention in litigation or an administrative proceeding to enjoin or abate the violation of a restriction when, in the reasonable judgment of the board of directors of the district, enforcement of the restrictive covenant is necessary to sustain taxable property values in the district.

(c) In addition to damages which a district is entitled to recover, a district shall be entitled to recover its costs and reasonable attorney's fees when a district is the prevailing party in litigation or an administrative proceeding to enforce a restriction.

Tex. Water Code Ann. § 54.237. The District emphasizes the mandate that "a district *shall* be entitled to recover its costs and reasonable attorney's fees when a district is the prevailing party in litigation . . . to enforce a restriction." *See id*. § 54.237(c).

The Robbinses acknowledge that section 54.237 is a "mandatory fee provision." *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (statutes providing that party "shall be awarded" attorney's fees not discretionary). They do not dispute that, if the District was the prevailing party in a suit to "enforce a restriction" under section 54.237, the district court would have had no discretion to refuse such an award. *See id*.; *see also* Tex. Gov't Code Ann. § 311.016 (West 2005) ("shall" imposes duty). However, they advance several legal theories they contend could have supported the district court's failure to assess attorney's fees in favor of the District. First, the Robbinses contend that the District waived its right to appeal the denial of its attorney's fees by not objecting in the trial court. Next, the Robbinses, relying on the fact that the District did not request

6

findings of fact and conclusions of law regarding the attorney's fees issue, urge that we imply various fact findings in support of the judgment.

The Robbinses also raise several issues challenging the District's right to assert a claim under section 54.237: (1) as a matter of law, the Robbinses were deemed to have complied with the restrictive covenants because the District did not file suit before they had finished constructing their trailer-port; (2) under section 54.237, the District failed to meet its burden of proving that the deed restrictions had not been waived or abandoned; (3) the District failed to prove that its enforcement decision was reasonably based on a perceived need to sustain taxable property values; (4) section 54.237 violates the Texas Constitution; (5) for any or all of these reasons, the District should not have been the "prevailing party" under section 54.237. Because these issues would require modification of the judgment if sustained, the Robbinses assert them in a cross-appeal.

While bringing a cross-appeal attacking the judgment, the Robbinses stress that their "bottom-line" concern is the prospect of our reversing and rendering judgment awarding the District attorney's fees under section 54.237. They have requested that we not reach their cross-appeal if we overrule the District's issue seeking attorney's fees.[1] For these reasons, we begin by assuming that the district court properly rendered judgment for the District enforcing the restrictive covenants and consider only whether the court, in light of that ruling, must award the District its attorney's fees.

_____

[1] Moreover, the Robbinses do not appeal the judgment in favor of Marquez enforcing the restrictive covenants. Thus, even if we addressed their cross-appeal and sustained one or more of those issues, the Robbinses would still be subject to the judgment in favor of Marquez and proscribed from placing a trailer-port and trailer on their property.

7

**Preservation of error**

The Robbinses argue that the District failed to preserve its issue regarding attorney's fees by failing to object or otherwise raise the issue post-judgment. We have examined the record and conclude that the District sufficiently alerted the district court to its contentions so as to preserve error.

Following the verdict, on December 15, the District and Marquez moved for entry of judgment notwithstanding the jury's $35,000 attorney's fee award and requested judgment awarding them $89,000 in attorney's fees, an amount consistent with their counsel's trial testimony. On the same date, the Robbinses filed a motion for mistrial asserting, among other grounds, that the jury had mistakenly awarded the $35,000 in attorney's fees to the District when, in fact, it had actually intended to award the amount to the Robbinses and give the District no fees.[2] They also sought judgment notwithstanding the verdict to award $76,000 in attorney's fees in their favor, an amount consistent with their counsel's testimony.

The record also indicates that a hearing was held on December 18 at which the district court requested supplemental briefing on attorney's fees.[3] Subsequently, the District and the Robbinses each filed supplemental briefs on attorney's fees. The District emphasized that section 54.237 made an award of attorney's fees mandatory. *See* Tex. Water Code Ann. § 54.237. The Robbinses argued that the District had failed to establish its attorney's fees entitlement under section

---

[2] The Robbinses tendered the affidavit testimony of several jurors to this effect, which the District moved to strike as inadmissible.

[3] There is no reporter's record from this hearing, but we have gleaned the fact of this event from the parties' briefing.

54.237, that the District's evidence regarding reasonableness and necessity was controverted and left room for the district court to "sort[] through that testimony to determine a reasonable award less than the amount requested," and that the court could offset any amount to which the District was entitled under section 54.237 with amounts to which the Robbinses were entitled under the declaratory judgment act. The district court ultimately rendered judgment that "[a]ttorneys fees and costs are to be borne by the party incurring the same."

As evidenced by this record, the District had not only alerted the district court to its argument that it was entitled to attorney's fees under section 54.237, but had briefed the issue at some length. In fact, attorney's fees appears to have been a primary disputed issue before the district court as it prepared to render judgment following trial, and the court ruled on the issue when rendering judgment. The Robbinses' waiver argument rests entirely on the fact that the District did not object *post-judgment* to the district court's failure to award attorney's fees. They quote language from *Air Park-Dallas Zoning Commission v. Crow-Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 912 (Tex. App.—Dallas 2003, no pet.), where the court found waiver because there was "no showing in the record that either side, following entry of judgment, brought the omission of attorney's fees to the attention of the trial court by a motion to amend or correct the judgment or in a motion for new trial." This language is taken out of context. There is no categorical rule requiring a party, after having alerted the trial court to its arguments regarding attorney's fees prior to judgment, to also raise that issue post-judgment in order to preserve error on that issue. *See Reagan Nat'l Adver. of Austin, Inc. v. Capital Outdoors, Inc.*, 96 S.W.3d 490, 497 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.) (waiver where party failed to complain about insufficiency of evidence at

9

hearing on attorney's fees and did not file a motion for a new trial or any other post-judgment motion bringing its complaint to the trial court's attention). We conclude that the District preserved error. *See* Tex. R. App. P. 33.1.

**Implied findings**

The Robbinses next advance arguments premised on the absence of findings of fact and conclusions of law regarding attorney's fees. Generally, judgments are presumed valid. *See Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 251 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). When neither party requests findings of fact and conclusions of law, it is implied that the trial court made all fact findings necessary to support its judgment. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Where, as here, there is a complete record, the judgment will be affirmed on any basis that has support in the pleadings and evidence under any theory of law applicable to the case. *Vickery*, 5 S.W.3d at 252; *see Worford*, 801 S.W.2d at 109. The presumption of validity is only prima facie and may be rebutted. *Vickery*, 5 S.W.3d at 252; *see Trapp v. Atlantic Refining Co.*, 170 S.W.2d 506, 509 (Tex. App.—Austin 1943, writ ref'd). However, because the presumption is always in favor of the validity of the judgment, the appellant carries the burden of demonstrating error. *See Vickery*, 5 S.W.3d at 252; *see also Miller v. Hood*, 536 S.W.2d 278, 285 (Tex. Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.). However, when the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Marchand*, 83

S.W.3d at 795; *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *see Sibley*, 111 S.W.3d at 52.

Relying on the presumption, the Robbinses have asserted that the following findings can be implied in support of the judgment refusing to award the District attorney's fees:

- The Robbinses were entitled to attorney's fees under the declaratory judgment act, and the two awards cancelled each other out.

- The District failed to segregate attorney's fees incurred on its behalf from those incurred on behalf of Marquez or the other five original plaintiffs.

- There was no evidence to support an award of attorney's fees to the District, as opposed to the other six plaintiffs.

The first implied finding that the Robbinses propose would be inconsistent with the judgment the district court rendered. Because the judgment awarded relief to the District on its enforcement claims against the Robbinses, the Robbinses were not, as a matter of law, the prevailing party and could not have been entitled to attorney's fees under the declaratory judgments act.[4] *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2004); *see also Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005). Inherent in the concept of implying findings in support of the judgment is that any such findings must be consistent with the judgment. We, therefore, cannot imply the first finding the Robbinses propose.[5]

---

[4] Also, as discussed below, there is no support for any implied finding that the District had incurred an amount of attorney's fees that could have been entirely offset by any amount awarded to the Robbinses.

[5] Similarly, during oral argument, the Robbinses attempted to recharacterize several of the arguments from their cross-appeal as supporting implied findings in support of the judgment, a distinction that would have had the effect of shifting the appellate burden on each issue. These

11

However, the Robbinses' proposed implied findings that the District failed to segregate its share of attorney's fees and failed to establish their reasonableness and necessity would not be inconsistent with the judgment. We proceed to consider whether there is legally and factually sufficient evidence to support such findings.

### *Failure to segregate attorney's fees*

In the proceedings below, the District's counsel also represented Marquez and the five other original plaintiffs. At trial, the plaintiffs collectively introduced evidence that they had incurred $89,000 in reasonable and necessary attorney's fees. As previously noted, the jury later

---

"implied findings" were: (1) the District lacked authority to file suit under section 54.237 because it had waived its right to enforce the restrictive covenants (or had failed to meet its burden of disproving waiver); (2) the District lacked statutory authority to sue under section 54.237 because there was no evidence (or at least legally and factually sufficient evidence to support an implied fact finding to the contrary) that its board of directors filed suit based on its "reasonable judgment [that] enforcement of the restriction is necessary to sustain taxable property values in the district"; (3) section 54.237 is unconstitutional on its face, and thus cannot serve as a vehicle for the District's enforcement action and attorney's fee claim. These "implied findings" would each be inconsistent with the judgment.

We cannot imply a fact finding that the District waived its right to enforce the restrictive covenants because the district court recited and rendered judgment on jury findings that the restrictive covenants had not been waived by either the District or Marquez. Moreover, each of these implied findings would negate the District's right of action under section 54.237, yet the judgment is necessarily predicated on that claim. *See* Tex. Water Code Ann. § 54.237. The district court rendered judgment enforcing the restrictive covenants on behalf of both Marquez and the District. At trial, the District had asserted its enforcement claim under both section 54.237 and the declaratory judgment act. However, neither party suggests that the District would have had standing to enforce the covenants independent of section 54.237. We accordingly conclude that we cannot imply findings negating the availability of section 54.237 because they would be inconsistent with the judgment awarding the District declaratory and injunctive relief. We instead consider the Robbinses' arguments underlying these "implied findings" as potential grounds for reversing the portion of the judgment enforcing the covenants on behalf of the District.

12

found that the District had incurred only $35,000 in reasonable and necessary attorney's fees. Thereafter, the parties disputed whether the jury had actually intended to award that amount to the Robbinses and no fees to the District. Evidently to resolve this dispute, when submitting a proposed final judgment, the parties filed a joint stipulation that "[t]he amount of attorney's fees testified to at the time of trial by counsel for the Plaintiffs and similarly the amount of attorney's fees testified to at the time of trial by counsel for the Defendants were reasonable and necessary."

While acknowledging their stipulation, the Robbinses strenuously urge that the district court nonetheless could have impliedly found that the District, as opposed to the other "plaintiffs" under the stipulation, incurred no reasonable and necessary attorney's fees. They point out that section 54.237 entitles a municipal utility district "to recover *its* costs and reasonable attorney's fees when [it] is the prevailing party in litigation." Tex. Water Code Ann. § 54.237(c) (emphasis added). The Robbinses observe that the District did not segregate the attorney's fees attributable to counsel's representation of it from those attributable to the other plaintiffs. By failing to segregate its specific share of the overall attorney's fees incurred by "plaintiffs," the Robbinses contend that the District left open the implied finding that "its costs and reasonable attorney's fees" were zero.

Generally, a party seeking attorney's fees must show that the fees were incurred on a claim that allows recovery of such fees, and must segregate fees incurred among different claims or separate parties. *See Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). However, when the claims are "dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of

13

being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims." *Sterling*, 822 S.W.2d at 11 (citing *Gill Sav. Ass'n v. Chair King, Inc.*, 783 S.W.2d 674, 680 (Tex. App.—Houston [14th Dist.] 1989), modified, 797 S.W.2d 31 (Tex. 1990)). Likewise, when the plaintiffs' issues are integrally related to the claims upon which recovery of attorney's fees is based, full recovery of attorney's fees should be allowed. *Aiello*, 941 S.W.2d at 73. We conclude that this exception to the segregation requirement applies here. The underlying action was for declaratory and injunctive relief to enforce restrictive covenants. The claims of all plaintiffs were dependent upon the same set of facts or circumstances—the existence of the restrictive covenants, whether the Robbinses breached them, and whether enforcement had been waived by non-enforcement. The plaintiffs employed the same attorneys to seek the same relief based on the same facts.[6] We conclude that, as a matter of law, the District's claims were inextricably intertwined with those of the other plaintiffs, enabling the District to recover the entire amount of attorney's fees covering all claims. *See Sterling*, 822 S.W.2d at 11. Thus, we find that there is legally and factually insufficient evidence to support an implied finding that the District incurred zero attorney's fees due to the District's failure to segregate.

### *Reasonableness and necessity of District's attorney's fees*

Our conclusion regarding segregation also forecloses any other implied finding that the District incurred no reasonable and necessary attorney's fees or some amount that could have been offset by any fees the district court conceivably could have awarded to the Robbinses.

---

[6] In fact, there is undisputed evidence that the District paid all of the plaintiffs' legal bills.

According to the joint stipulation and evidence at trial, the District, on behalf of all plaintiffs, incurred $89,000 in reasonable and necessary attorney's fees, while the Robbinses incurred only $76,000. Even assuming that the Robbinses were somehow entitled to recover their fees, *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.009, the record belies any implied finding necessary to support the Robbinses' theory of offsetting attorney's fee awards.

**The Robbinses' issues challenging the judgment**

Having found no legal support for a judgment that both enforced the restrictive covenant on behalf of the District and refused to award it attorney's fees, we would be required to sustain the District's issue unless there are grounds for reversing the portion of the judgment awarding the District relief under section 54.237. We now turn to the Robbinses' issues attacking the District's right to assert an enforcement claim under section 54.237.

At trial, the Robbinses' primary strategy, quite understandably, was to attempt to convince the jury to find in their favor on the fact issues of whether the District and Marquez had waived their rights to enforce each restrictive covenant. The Robbinses introduced numerous photographs taken in the Anderson Mill area purporting to illustrate facts giving rise to waiver, such as recreational vehicles, boats and trailers parked at residences and structures that residents had previously constructed to house such vehicles. The jury heard this evidence but ultimately disagreed with the Robbinses. On appeal, the Robbinses, with new counsel, have shifted focus somewhat with an array of new legal arguments. Some were not preserved given the Robbinses' different strategic focus at trial.

15

*Deemed compliance*

In their first issue, the Robbinses contend that the district court erred in rendering judgment for the district on its enforcement claims and denying their motions for judgment notwithstanding the verdict and directed verdict because their compliance with the restrictions should have been deemed as a matter of law. They rely on section A-2 of the covenants, "Architectural Control," which states:

> No building shall be erected, placed or altered on any lot until a copy of the construction plans and specifications and a plan showing the location of the structure, if approved, shall remain in the possession of said committee until this subdivision has been built in its entirety. . . . In the event the committee, or its designated representative, fails to approve or disapprove within 30 days after plans and specifications have been submitted to it, *or in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with*.

(Emphasis added.) The Robbinses assert that the District did not file suit before the trailer-port structure was completed and that, therefore, section A-2 "shall be deemed to have been fully complied with" as a matter of law. We disagree.

There was disputed evidence at trial regarding exactly when the trailer-port was completed and whether completion occurred before the District filed suit. As such, the issue of deemed compliance under section A-2 was one of fact rather than law. The Robbinses did not request a submission on whether they were deemed to have complied with section A-2, or object to

16

its omission from the charge.[7]  The district court therefore did not err in refusing to grant the Robbinses' directed verdict and j.n.o.v. motions.  We overrule the Robbinses' first issue.[8]

*Waiver*

In their second issue, the Robbinses contend that section 54.237 placed the burden on the District to *disprove* that it had waived its right to enforce the restrictive covenants and that the District failed to meet this burden.  They rely on the wording of section 54.237's definition of "restriction," which includes limitations that have "not been abandoned, waived, or properly rescinded."  Tex. Water Code Ann. § 54.237(a).  The Robbinses construe this language as making the absence of abandonment, waiver, or rescission an element of the District's action under section 54.237 rather than an affirmative defense on which the Robbinses had the burden of proof.  However, because the Robbinses did not object, tender proposed questions or instructions, or otherwise complain at trial that the charge improperly assigned to them the burden of proof, they have waived that contention.

Because the Robbinses' issue may be more generally construed as a challenge to the jury's findings on the waiver issues, we will proceed to evaluate the sufficiency of the evidence supporting those findings.  We limit our inquiry to legal sufficiency; although the Robbinses had

---

[7] For this reason, we need not reach the parties' dispute concerning whether the Robbinses are estopped from asserting deemed compliance or whether the District waived that counter-defense by failing to submit it to the jury.

[8] We also note that this issue, even if sustained, would implicate only section A-2 and not the other two restrictive covenants.

filed a motion for new trial that would have preserved a factual sufficiency complaint, their trial counsel later withdrew the motion at the Robbinses' insistence. *See* Tex. R. Civ. P. 324(b).[9]

When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, No. 02-1012, 2005 Tex. App. LEXIS 436, at *1-2 (Tex. Jun. 10, 2005). There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

Generally, in order to find a waiver of a residential restrictive covenant, the proposed non-conforming structure must not have a substantially different effect on the neighborhood than any prior violation. *Lay v. Whelan*, No. 03-03-00115-CV, 2004 Tex. App. LEXIS 5777, at *12-13 (Tex. App.—Austin 2004, pet. denied); *see Sharpstown Civic Ass'n, Inc. v. Pickett*, 679 S.W.2d 956, 957 (Tex. 1984). There is no waiver of restrictive covenants if prior, unobjected-to violations are insignificant or insubstantial when compared to the proposed new use. *Lay*, 2004 Tex. App. LEXIS 5777, at *12-13; *Pickett*, 679 S.W.2d at 957; *Stewart v. Welsh*, 178 S.W.2d 506, 508 (Tex. 1944).

---

[9] The legal sufficiency complaint regarding waiver was preserved in their motion for j.n.o.v.

In order to carry the burden of demonstrating a waiver of restrictive covenants, a party must prove that "the violations then existing were so extensive and material as to reasonably lead to the conclusion that the restrictions had been abandoned." *Cox v. Melson-Fulsom*, 956 S.W.2d 791, 794 (Tex. App.—Austin 1997, no pet.); *see Lay*, 2004 Tex. App. LEXIS 5777, at *12-13. The number, nature and severity of the existing violations, any prior acts of enforcement, and whether it is still possible to realize to a substantial degree the benefits sought to be obtained through the covenants are factors to be considered in determining waiver. *Cox*, 956 S.W.2d at 794.

Here, there was conflicting evidence regarding the consistency with which the District had enforced restrictions on structures, set-backs, and vehicles. At trial, the Robbinses introduced photographs of alleged violations to which the District purportedly had not objected. The District introduced evidence demonstrating its prior enforcement efforts, including demand letters, lawsuits, and attempts to reach agreements over other alleged restrictions. We conclude that the District's evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions as to whether the District had waived the restrictive covenants at issue. *Havner*, 953 S.W.2d at 711. We accordingly hold that there was legally sufficient evidence that the District did not waive the restrictions.

### *Reasonableness of District's judgment regarding effect on property values*

Also in their second issue, the Robbinses contend that the District failed to comply with the statutory predicate "when, in the reasonable judgment of the board of directors of the district, enforcement of the restrictive covenant is necessary to sustain taxable property values in the district." Tex. Water Code Ann. § 54.237(b). As previously noted, the district court did not submit

19

to the jury this issue or any other issue regarding the merits of the District's enforcement claims other than waiver. Nor, given their strategic focus on waiver, did the Robbinses request a submission on this issue.[10] Accordingly, we will construe the Robbinses' argument here as a challenge to the legal and factual sufficiency of the district court's implied finding, supporting the judgment, that the District's board of directors reasonably determined that its enforcement action was necessary to sustain taxable property values. *See Marchand*, 83 S.W.3d at 795; *Roberson*, 768 S.W.2d at 281.[11]

We have previously stated our legal sufficiency standard of review. When reviewing a challenge to the factual sufficiency of evidence, we must consider, weigh, and examine all of the evidence in the record. *Plas-Tex., Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We will set aside the verdict only if the evidence that supports the finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

As a threshold matter, we consider the nature of section 54.237's "reasonable judgment" requirement, the benchmark against which we will evaluate the sufficiency of the evidence. *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004) (if statutory text is unambiguous, court must adopt interpretation supported by statute's plain language unless interpretation leads to absurd results). "Reasonable judgment" as employed in Texas law denotes the use of ordinary care, not simply arbitrary action, and may imply

---

[10] The District proposed such a submission in its initial draft of the jury charge.

[11] Alternatively, assuming, as the Robbinses contend above, the District had the burden to disprove waiver as an element of its enforcement claim under section 54.237, we construe the Robbinses' argument to challenge the legal and factual sufficiency of the findings we would imply under rule of civil procedure 279. *See* Tex. R. Civ. P. 279; *see also Chon Tri v. J.T.T.*, 162 S.W.3d 552, 558 (Tex. 2005); *Ancira Enters., Inc. v. Fischer*, No. 03-03-00498-CV, 2005 Tex. App. LEXIS 4708, at *13 (Tex. App.—Austin June 16, 2005, no pet. h.).

20

a measure of discretion. *See Pooser v. Lovett Square Townhomes Owners' Ass'n*, 702 S.W.2d 226, 231 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Raymond v. Aquarius Condo. Owners' Ass'n, Inc.*, 662 S.W.2d 82, 89-90 (Tex. App.—Corpus Christi 1983, no writ).

The Robbinses attempt to characterize the District's enforcement efforts as based solely on complaints by the Anderson Mill Neighborhood Association or individual residents rather than any independent reasonable judgment concerning impact on taxable property values. They also rely on evidence of some inconsistencies in the District's prior approach to some enforcement actions. One of the Robbinses' neighbors testified that the District had declined to enforce the covenants to bar his construction of a large structure to house his recreational vehicles in the belief that it could not prove his structure would actually decrease property values. The neighbor added that a District representative had confided to him that its contrary approach with the Robbinses had been driven by the District's "new attorneys," who believed that it no longer had to prove that enforcement was necessary to preserve property values. Finally, the Robbinses rely on evidence of an appraisal, made while they were constructing the trailer-port, indicating that their property value had increased since the prior year.

On the other hand, there is evidence that the District received considerable input from residents who expressed concern that the Robbinses' construction of the trailer-port and placement of their travel trailer was endangering their property values. Two neighborhood residents testified that they told the District's board that they feared a loss in property values because of the Robbinses' violations of the restrictions. Furthermore, Bamer represented that the board's position was that

21

enforcement in this case, and in general, was necessary to preserve property values.[12] Correspondence prior to the District's meetings with the Robbinses and when it decided to file suit reflects that it was considering the effect on property values. The District's July 2001 letter notified the Robbinses that if, "in [the Board of Directors'] opinion, property values are reduced as a result of this alleged violation, the Board will have the option to direct the district's attorney to file suit in court to remedy the alleged violation and to recover the district's costs and legal fees, which the law allows." *See* Tex. Water Code Ann. § 54.237.

We find legally and factually sufficient evidence that the District's board did not act unreasonably in determining that enforcement of the restrictive covenants was necessary to preserve property values.[13] We overrule the Robbinses' second issue.

### Constitutionality of section 54.237

In their third issue, the Robbinses assert that section 54.237 is unconstitutional on its face. The constitutionality of a statute is a question of law that we review *de novo*. *State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002); *Perry v. Del Rio*, 67 S.W.3d 85, 91 (Tex. 2001). To prevail on their facial challenge, the Robbinses have the burden of showing that section 54.237 is

---

[12] We also note photographs and other evidence that illustrate the nature and dimensions of the Robbinses' structure and travel trailer, illustrating why the District's board and residents were so concerned about property values. The structure was metal-framed, approximately fourteen feet tall, and resembled a large shed or hangar. It contained lights that illuminated Marquez's upstairs bedroom and blocked sunlight to portions of his yard, killing plant life. The travel trailer resembled a large bus and was 30 feet long, extending almost the entire length of the Robbinses' driveway.

[13] For purposes of our factual sufficiency review, we have assumed that the Robbinses' evidence was probative of whether the District's board acted reasonably. We express no opinion regarding whether the Robbinses, in fact, raised a fact issue concerning the reasonableness of the Board's actions.

unconstitutional in every possible application. *See In re Fisher*, 164 S.W.3d 637, 655 (Tex. 2005); *City of Corpus Christi v. Public Util. Comm'n*, 51 S.W.3d 231, 240-241 (Tex. 2001).

As entities, municipal utility districts were constitutionally created by section 59 of the Texas Constitution. *See* Tex. Const. art. XVI, § 59. In section 59, the conservation and development of all of the natural resources of Texas, and development of parks and recreational facilities were declared public rights and duties. *Id*. Specific powers are granted to districts which they may not exceed, even by legislative enactment. *See Deason v. Orange County Water Control & Improvement Dist. No. 1*, 244 S.W.2d 981, 984 (Tex. 1952); *see also* Tex. Const. art. III, § 52, art. XVI, § 59. The Robbinses argue that the enforcement of deed restrictions is not within the enumerated constitutional powers granted to municipal utility districts and that, therefore, the legislature lacked authority to grant the power in section 54.237. *See* Tex. Water Code Ann. § 54.237.

We need go no further than to observe that section 54.237 is not unconstitutional in every possible application. *See In re Fisher*, 164 S.W.3d at 654-55. The Texas Constitution provides that "the conservation and development of all of the natural resources of this State . . . including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes . . . the reclamation and drainage of its overflowed lands, and other lands needing drainage . . . and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto." Tex. Const. art. XVI, § 59. Therefore, if, for example, a restrictive covenant prohibited dumping oil into a storm

23

sewer, the District would be within its constitutional authority in enforcing the restrictive covenant. *See id*. Thus, section 54.237 is not facially unconstitutional. *See* Tex. Water Code Ann. § 54.237. We overrule the Robbinses' third issue.

### *Prevailing party*

The Robbinses' fourth issue is predicated upon the other three issues in its cross-appeal: they contend that because they should have been the prevailing party below, we should reverse and remand so the district court can determine whether to award them attorney's fees under the declaratory judgment act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). Because we have found that the district court did not err in rendering judgment in favor of the District on its enforcement claims, we overrule the Robbinses' fourth issue.

## CONCLUSION

We sustain the District's issue and overrule the Robbinses' issues. We affirm the portion of the district court's judgment awarding declaratory and injunctive relief to the District, reverse the portion regarding attorney's fees, and render judgment awarding the District attorney's fees in the amount of $89,000.

In doing so, we are not unmindful of how the district court and jury may have perceived the equities in this case. Under many attorney's fees statutes, the district court would have had some discretion to consider such equities in determining whether to award fees. *See*, *e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Herring*, 972 S.W.2d at 20.

We express no opinion regarding the balance the district court may have struck here between competing equitable considerations other than to hold that section 54.237 leaves no room for it. *See* Tex. Water Code Ann. § 54.237. Rather than allowing trial courts discretion to balance the equities regarding attorney's fees in each case, the legislature has manifested the policy judgment that districts should always recover all of their reasonable and necessary attorney's fees in any section 54.237 action in which they prevail. We are bound to apply section 54.237 as written. *See Utts v. Short*, 81 S.W.3d 822, 843 (Tex. 2002). Any concerns with the relative equities in this case, therefore, are properly directed to the legislature rather than the courts.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed in Part; Reversed and Rendered in Part

Filed:   September 8, 2005