SHARPSTOWN CIVIC ASSOCIATION,
INC., et al., Petitioners,

v.

Ronald I. PICKETT, et al.,
Respondents.

No. C–2889.

Supreme Court of Texas.

Oct. 17, 1984.

Rehearing Denied Nov. 28, 1984.

Kenneth C. Raney, Jr., Dallas, Hofheinz, Harpold, McDonald & Fitzgerald, Harvey A. Ford, Houston, for petitioners.

Hinton & Morris, Robert N. Hinton and Kent J. Browning, Houston, for respondents.

WALLACE, Justice.

This is a suit to enjoin the violation of deed restrictions on two lots in a residential subdivision. The trial court, based upon a jury verdict, rendered judgment denying a permanent injunction. The court of appeals affirmed. 667 S.W.2d 840. We reverse the judgments of the courts below and render judgment granting the injunction.

· Sharpstown Civic Association, Inc., and six resident lot owners of Sharpstown Country Club Terrace, Section Two, in Houston, Harris County, Texas (Sharpstown) brought suit against Ronald I. Pickett, et al., (Pickett) to enjoin the proposed construction of a commercial car wash on the lots in question. Those lots are Lots One and Two, Block 42, Sharpstown Country Club Terrace, Section Two. The two lots form a triangle, the base of which abuts Triolo Lane, a two-lane residential street. One of the longer sides of the triangle abuts South Gessner Road, a four-lane city street. The third side abuts an 80-foot wide drainage easement which abuts an adjoining 150-foot wide utility easement. There is no discernible boundary line between the two lots.

In 1969, Robert Hill purchased the two lots and moved a 12' x 38' one-story wooden building onto Lot One. He built a circular gravel driveway in front of the building and made water, sewage, electricity and telephone connections. The building was used by Mr. Hill as a real estate office. He also rented space to an insurance salesman and to an attorney. This use was continued until mid-November of 1979, when the property was sold to Pickett. Pickett used the building as an office until April of 1980, at which time he erected a sign that announced the future use of the two lots as a commercial car wash. Sharpstown contacted Pickett and objected to the use of the lots as a car wash. The parties were unable to agree on a use of the lots and this suit was filed. Pickett indicated at trial that he was considering using the property for a strip shopping center rather than a car wash. He is now using Lot One as a used car lot.

The jury found in answer to special issues as follows:

(1) Lot One was used for non-residential purposes but Lot Two was not so used;

(2) The non-residential use of Lot One began in the 1970's;

(3) The non-residential use of Lot One was continuous from 1970 until the filing of this suit;

(4) Lots One and Two were used and maintained as one parcel;

(4a) One or more of the Plaintiffs knew of the non-residential use of Lot One but not of Lot Two;

(5) One or more of the Plaintiffs first knew of the non-residential use of Lot One in 1970;

(5a) A person of reasonable prudence should have known of the non-residential use of Lot One;

(6) A person of reasonable prudence should have known of the non-residential use of Lot One commencing in 1970; and

(7) Plaintiffs waived the right to enforce the restrictions against non-residential use of the property.

The issues to be decided are: (1) whether non-residential use of Lot One, without ob-

jection by Sharpstown, will support a waiver by Sharpstown of its right to enforce restrictions on Lot Two; (2) whether the use of the small office building on Lot One, without objection by Sharpstown, was sufficient to waive its right to enjoin the use of the lot for use as a commercial car wash or a strip shopping center; and (3) whether there could be waiver of the non-residential use of Lot One absent a showing that each plaintiff (Sharpstown) actually knew of the non-residential use.

■ Pickett contends that the use of Lot One as a site for the small office building constitutes a use of both lots for that purpose. Sharpstown contends that there is no evidence to substantiate the jury's finding that both lots were used as one parcel. The only evidence of any use of Lot Two was infrequent mowing of the grass plus occasional parking of one or more vehicles on the lot. We hold this does not constitute evidence of use of Lot Two for non-residential use.

■ Pickett further contends that the use of Lot One for non-residential purposes was sufficient to support waiver of the restrictions on Lot Two because of the location and shape of the two lots. We reject this contention for two reasons. First, the lots are separate and distinct as evidenced by the plat filed of record. Because they are separate lots, whether one or both were used in violation of the restrictions must be determined based upon the use made of each lot. *See Wade v. Magee,* 641 S.W.2d 321 (Tex.App.—El Paso 1982, writ ref'd n.r.e.). Second, the jury failed to find any non-residential use of Lot Two, or that any of the plaintiffs knew, or that a reasonable person should have known, of any non-residential use of Lot Two. Pickett thus failed to carry his burden of proof on the issue of non-residential use of Lot Two. The courts below thus erred in denying injunctive relief to Sharpstown as to Lot Two.

The next question is whether the use of Lot One as a site for the small office building, without objection by Sharpstown, constituted a waiver of the use of that lot for a commercial car wash or a strip shopping center. Pickett contends that any non-residential use was sufficient to support every non-residential use. Sharpstown contends that the use of the small office building was not a substantial violation of the restrictions. Therefore, according to Sharpstown, Pickett's stated purpose of building a commercial car wash constituted a new violation of the restrictions and Sharpstown acted promptly to enjoin that use.

■ Pickett's argument, followed to its logical conclusion, would require us to hold, as an example, that use of residential property for the purpose of giving piano lessons for hire, if continued for a sufficient time, would give rise to the right of the owner of that property to convert it to a service station or other equally undesirable use. We find a more reasonable interpretation of the applicable law to be that in order to support a waiver of residential restrictions the proposed use must not be substantially different in its effect on the neighborhood from any prior violation. To put it another way, the prior violation which has been carried on without objection, if insignificant or insubstantial when compared to the proposed or new use, will not support a waiver of the new and greater violation. See *Arrington v. Cleveland,* 242 S.W.2d 400 (Tex.Civ.App.—Fort Worth 1951, writ ref'd); *Wilson v. Gordon,* 224 S.W. 703 (Tex.Civ.App.—Galveston 1920, writ dism'd). We hold that Sharpstown waived the restrictions as to the use of Lot One for the purposes for which it was used from 1970 until purchased by Pickett in November of 1979.

■ Sharpstown contends that there could be no waiver of the right to enjoin the violation of the deed restrictions absent actual notice to each of them of the violations which occurred between 1970 and 1979. The jury found that a reasonably prudent person should have known of the non-residential use of Lot One from 1970 to 1979. This is equivalent to a finding of constructive notice of the non-residential use. A purchaser is bound by these restrictions of which he has constructive no-

tice. *See Davis v. Huey*, 620 S.W.2d 561, 565 (Tex.1981). There was evidence to support this finding.

We hold that Pickett be enjoined from conducting non-residential activities on Lot Two, and that he be enjoined from conducting non-residential activities on Lot One which are of a more substantial nature than those conducted by his predecessor in title from 1970 to 1979. Therefore, we reverse the judgments of the courts below and render judgment that Pickett be enjoined from using the property as a commercial car wash, a strip shopping center, or a used car lot.

GONZALEZ, J., not sitting.