Mike COLTON, Appellant,

v.

SILSBEE STATE BANK, Appellee.

No. 09–96–084 CV.

Court of Appeals of Texas,
Beaumont.

Submitted March 13, 1997.

Decided Aug. 28, 1997.

Thomas J. Sibley, Beaumont, for appellant.

Jacqueline M. Stroh, Benckenstein, Norvell & Nathan, Beaumont, Russell W. Heald, Hilliard & Heald, Beaumont, for appellee.

Before WALKER, C.J., and STOVER and HILL [1], JJ.

## OPINION

HILL, Justice (Assigned).

Mike Colton appeals from a summary judgment declaring that certain restrictive covenants in a document entitled "Easement and Covenants Restricting Land" (ECRL) are unenforceable and granting reasonable and necessary attorney's fees to Silsbee State Bank, the party seeking the declaratory judgment. Colton presents five points of error in which he contends the trial court erred by granting the summary judgment because there are genuine issues of material fact and because he is not barred by limitations from enforcing the covenants contained in the ECRL.

We reverse the judgment and remand this cause for trial because there is a genuine issue of material fact with respect to every basis upon which the Bank relies in its motion for summary judgment.

Silsbee State Bank brought this action seeking a declaratory judgment that certain of the restrictive covenants in the ECRL entered into between its predecessor in interest, Hardin County Savings and Loan Association, and Colton's predecessor in interest, GSV Properties, are unenforceable, based upon waiver, estoppel, laches, and the statute of limitations. The Bank then filed its motion for summary judgment, asserting it had established its right to the declaratory judgment as a matter of law. Colton filed his response to the Bank's motion, urging genuine issues of material fact exist that preclude summary judgment in favor of the Bank.

The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in its favor. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985).

The Bank's motion for summary judgment urges that as a matter of law it is entitled to declaratory judgment that the restrictive covenants in the ECRL are unenforceable based upon waiver, estoppel, laches, and the statute of limitations. In support of its motion, the Bank presents the affidavit of Randy Stuart, President of the Bank. He relates that the Bank's predecessor in title had made previous improvements in violation of the ECRL. He indicates these improvements consisted of a drive-thru facility north of the restrictive covenant boundary and an addition to its building extending fourteen feet west of the boundary. He says in 1994 the Bank apprised Colton of its contemplated expansion, including extension of the drive-thru facilities on the north side and extension of the conference room on the west side.

The affidavit indicates that, shortly thereafter, Colton participated in negotiations with the City of Lumberton and Wal–Mart in which all parties, based upon the proposed expansion, were planning on constructing a roadway between the Bank's tract and Colton's tract that would lead into Wal–Mart's property. According to Stuart, Colton and the Bank were contributing a portion of their land for the roadway, Wal–Mart was paying for it, and the City was going to pave it.

Stuart further states that a few months later, when the Bank was preparing to submit its plans for bidding, the Bank asked Colton if he would like to be placed on the

---

1. The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code Ann § 74.003(b) (Vernon 1988).

bid list, and he responded in the affirmative. At that time, according to Stuart, Colton made no objection to the Bank's plans to expand its facilities. Stuart indicates Colton first objected on March 14, 1995, when he, through his attorney, sent correspondence to the Bank advising that Colton did not approve of the expansion plans.

Stuart says in his affidavit the proposed expansion by the Bank consists of tearing down a Teller 24 ATM building and, in its stead, constructing a drive-thru that would allow greater visibility of Colton's property than would have existed had the drive-thru not been erected. Also, Stuart advises the Bank intends to construct an addition to the existing facility extending fifteen feet west of its current facility and also construct an addition to the existing facility extending south thirty-five feet. He indicates the westerly expansion would be considered in violation of the restrictive covenants if they were enforceable and that the southerly expansion would not be in violation of the restrictions contained in the ECRL, except to the extent that it extends fourteen feet west of the restrictive covenant boundary. He concludes by stating the only expansions that extend beyond the restrictive covenant boundaries include the northerly expansion of the drive-thru facility and the westerly expansion of the building facility, neither of which results in decreased visibility of Colton's property.

Colton, in answer to the Bank's request for admissions, acknowledges he was shown a rough sketched plan of the Bank's expansion plan, but otherwise denies he was informed by someone with the Bank, prior to 1994, of the Bank's plan to extend its facilities. He further states he was shown no diagram depicting any detail of elevation, scale, interior plans, front, or other detail. With respect to any proposed roadway between the Bank's tract and his, Colton states there were negotiations among Wal–Mart, the City of Lumberton, the Bank, and himself, but that he never gave such an easement because Wal–Mart, the City, and the Bank were unable to construct such a roadway "in conformity with the currently existing conditions." He insists that the City, Wal–Mart, and the Bank refused to reduce any agreement to writing,

and he refused to enter into any agreement that might violate the applicable restrictive covenants. With respect to being placed on the bid list for the Bank's expansion, Colton states in answer to an interrogatory that he told the Bank there was a possibility he would like to be placed on the bid list. Colton acknowledges by admission he was aware, from the date he learned of the Bank's proposed expansion, that the Bank was incurring substantial expense in architectural fees for formalizing its expansion plans.

As previously noted, Colton asserts in his response to the Bank's Motion for Summary Judgment that there are material fact issues precluding summary judgment for the Bank. In his affidavit attached to his response, Colton acknowledges the Bank's existing building is in violation of the ECRL, stating neither he nor the Bank owned the property at the time of the expansion and were not aware of the violation. He indicates he was informed by a Bank official of the Bank's expansion plan on November 28, 1994, but was unable to determine the extent of the Bank's proposed addition to its building, and therefore could not determine whether there was a violation of the ECRL, because the only information the Bank gave him was a rough sketch that did not have physical measurements or dimensions on it.

Colton further states in his affidavit that from November 30, 1994, through early March, 1995, he visited with the Bank's branch manager, calling to his attention on at least three occasions that there were restrictive covenants on the property. He said he highlighted areas of the restrictions that were of concern to him and gave the branch manager a copy. He insists the first time he was able to determine the extent of violations of the ECRL was on March 1, 1995, when he received a copy of the recently-prepared site plan. He says he objected to the addition to the Bank's facilities as noted on the site plan, except for expansion to the south that would not violate the ECRL. He states he received a bid package on or about March 8, 9, or 10, 1995, and that subsequently, on March 14, 1995, his attorney notified the Bank of his

objections to certain of the additions as violating the ECRL.

Finally, Colton states in his affidavit ·that the Bank's proposed expansion on the north side of its property will substantially hamper the visibility of his property from Highway 96, as will the increase in height of the Bank's building to eighteen feet. He indicates the increase in height is also a violation of the ECRL.

■ Before we can determine whether the summary judgment evidence raises material fact issues, we must determine what the issues in this case are. The first issue is whether the restrictive covenants remain enforceable despite the violations of the ECRL by the Bank's predecessors. We believe this issue is determined by whether the prior expansion by the Bank is significant or insignificant when compared to the proposed or new use. *See Sharpstown Civic Ass'n v. Pickett,* 679 S.W.2d 956, 958 (Tex.1984).

As previously noted, there is summary judgment evidence that the previous improvements consisted of the construction of a two-lane drive-thru facility north of the ECRL boundary and an addition to the bank building of fourteen feet west of the boundary. The summary judgment also shows the proposed expansion exists of tearing down a Teller 24 ATM building, adding three new drive-thru lanes, and adding fifteen feet to the west side of the Bank building. There is also, according to the evidence, a proposed addition to the south side of the building that does not appear to be a subject of dispute. There is also summary judgment evidence that the height of the building is going to be raised to eighteen feet, but our attention has not been called to evidence as to what the current height of the building is. There is no indication that it is higher than allowed by the ECRL.

As previously noted, Mr. Stuart, in his affidavit, states the proposed expansion allows greater visibility of Colton's property, rather than any decreased visibility. On the other hand, Colton states in his affidavit the Bank's proposed expansion on the north side of its property will substantially hamper the visibility of his property from the highway, as will the increase in the height of the Bank's building.

We conclude the Bank's summary judgment evidence does not establish as a matter of law that the prior violation is significant or substantial when compared to the proposed use. Consequently, there is a material fact issue as to the significance or lack thereof of the prior violation as compared to the proposed violation of the ECRL.

■ The Bank suggests the summary judgment evidence establishes as a matter of law the proposed use is roughly equivalent because the extent of the proposed violation is only slightly greater than the extent of the original violation. What this means is that the proposed violation will result in a violation more than double the extent of the original violation. Given that fact, we cannot say as a matter of law the original violation was significant or substantial when compared to the proposed use. Also, we are of the view that in reviewing whether the prior violation is significant or insignificant when compared to the proposed use, a mere size comparison, while relevant, is not by itself determinative, because all factors relating to the two violations and their impact with respect to the purpose of the restrictive covenant must be taken into consideration.

■ Another issue in this case is whether Colton unreasonably delayed in asserting any objection to the proposed expansion. The resolution of this issue depends upon when Colton first learned of facts that would reasonably have caused him to object and whether he did, in fact, object. As noted above, the Bank presented summary judgment evidence to the effect that Colton was aware of its expansion, including its extent, and that Colton made no complaint about the expansion until his attorney wrote the Bank to give notice of Colton's objection. Colton, on the other hand, submitted summary judgment evidence that he did not know the extent of the expansion, but that on several occasions he did let the Bank know of his concern that the expansion not violate the ECRL. We hold the summary judgment evidence does not establish as a matter of law that Colton unreasonably delayed in asserting his rights with respect to the restrictive

covenant and that there is a material fact issue with respect to that question.

■ The Bank asserts the ECRL is unenforceable because of the doctrine of laches. A party asserting laches has the burden of proving (1) an unreasonable delay in asserting a legal or equitable right, and (2) a good faith change of position by another to his detriment because of the delay. *Rogers v. Ricane Enter., Inc.* 772 S.W.2d 76, 80 (Tex. 1989). As we have noted, there is a material fact issue as to Colton with respect to the first element. The Bank, however, asserts laches both as to Colton and his predecessor in title. We believe such an assertion as to Colton's predecessor in title is contingent upon a determination of whether the original violation of the ECRL is significant or insignificant when compared to the proposed expansion because it would not be equitable to invoke Colton's predecessor's failure to object to the original violation if, in fact, that violation was insignificant or insubstantial when compared to the proposed use. In view of our holding that there is a material fact issue as to that question, we hold the Bank failed to establish laches as a basis for summary judgment both as to Colton and his predecessor in title.

The Bank relies on the case of *Tejas Trail Property Owners Ass'n v. Holt,* 516 S.W.2d 441 (Tex.Civ.App.—Fort Worth 1974, no writ). We find that case to be distinguishable. In that case, a trial before the court, a homeowner's association sought to enforce a deed restriction that banned a composition roof. Although the association knew in advance the homeowner was going to install a composition roof, it took no action to prevent the installation until after the roof had already been installed. We find *Tejas Trail* distinguishable, both because it was a bench trial, rather than a motion for summary judgment, and because in that case it was not disputed that those seeking enforcement of the restriction knew the precise nature of the prospective violation and yet did not bring any action until the violation had already occurred. In this case there is a fact issue as to what Colton knew or should have known with respect to the expansion and to what extent, if any, he complained of the violation

of the ECRL to the Bank prior to his formal objection that he made through his attorney.

The Bank also relies on the doctrine of estoppel, arguing that because Colton knew about the expansion while failing to object to it and taking actions showing his approval of the expansion he is estopped from now asserting objections to it. As we have noted, the summary judgment evidence conflicts as to what Colton knew concerning the Bank's expansion and when and to what extent, if any, he might have objected to the expansion. Because of these conflicts, we hold there is a material fact issue as to whether Colton should be estopped from making objections to the Bank's expansion. With respect to the Bank's claim Colton should be estopped based upon any conduct of his predecessor in title, we hold there is a material fact issue with regard to estoppel, for the same reason we expressed with respect to the Bank's laches claim.

■ Additionally, the Bank relies on the doctrine of waiver. The Texas Supreme Court has defined waiver as the intentional relinquishment of a known, existing right or intentional conduct inconsistent with claiming it. *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co., Inc.,* 416 S.W.2d 396, 401 (Tex.1967). There is no waiver of the enforcement of restrictive covenants by a prior violation of those covenants where the prior violation is insignificant or insubstantial as compared to the proposed use. *Sharpstown Civic Ass'n, Inc.,* 679 S.W.2d at 958. Inasmuch as we have held there is a material fact issue regarding this question, we also hold there is a material fact issue respecting waiver. Under the facts of this case, the issue as to whether the right to enforce the restrictive covenant has been waived is dependent on the resolution of the two issues of material fact we have previously discussed.

In support of its argument in favor of the trial court's granting of the motion for summary judgment on the basis of waiver, the Bank argues Colton "admits he can no longer recognize the benefits he seeks because those benefits have already been abrogated by the facilities as they now exist because of the initial violation." The Bank bases this statement on an answer Colton gave to one of the

Bank's interrogatories. At best, Colton's answer to the Bank's interrogatory states the original violation had an effect on the benefits enjoyed by him by virtue of the ECRL. There is no admission by Colton that he can no longer recognize the benefits he seeks because those benefits have already been abrogated by the facilities as they now exist because of the original violation.

The Bank contends this Court is not required to compare the existing violation with any proposed violation to determine whether the original breach is substantial enough to support a waiver. It says the covenants were either breached or not breached and that the breaches were either substantial or insubstantial. The Bank's argument is contrary to the holding in *Sharpstown* indicating that a prior violation carried on without objection, if insignificant or insubstantial when compared to the proposed or new use, will not support a waiver of the new and greater violation. *Sharpstown Civic Ass'n, Inc.,* 679 S.W.2d at 958.

■■■ Finally, the Bank asserts the trial court did not err in granting summary judgment since any challenge Colton might make to its proposed expansion is barred by the four-year statute of limitations. The four-year statute of limitations, formerly TEX.REV. CIV. STAT. ANN. art. 5529, and now TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (Vernon 1997), is controlling in suits to enforce restrictive covenants. *Park v. Baxter,* 572 S.W.2d 794, 795 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). The statute accrues upon the breach of the covenant. *See id.* Colton would assert that the breach has yet to occur, while the Bank asserts it occurred more than four years ago, when the initial violation of the ECRL occurred. As noted in *Sharpstown, supra,* the fact that there has been a violation of the covenants does not prevent their being enforced where the prior violation is insignificant or insubstantial when compared to the proposed or new use. Given that fact, we hold where the prior violation is insignificant or insubstantial when compared to the proposed or new use, the statute of limitations accrues upon the subsequent breach of the covenant, whereas it otherwise accrues from the date of the original viola-

tion. Here, we have held there is a material fact issue concerning whether the prior violation is significant when compared to the proposed use. Consequently, the trial court erred by granting summary judgment if it did so on the basis of the Bank's assertion of the statute of limitations.

The Bank argues the statute of limitations ran from the initial violation of the restrictions, not the proposed violation, referring us to the initial appeal in the case of *Sharpstown Civic Ass'n, Inc. v. Pickett,* 667 S.W.2d 840 (Tex.App.—Houston [14th Dist.] 1984), *rev'd on other grounds,* 679 S.W.2d 956 (Tex. 1984). We find this case to be distinguishable. In *Sharpstown,* the nature of the restrictive covenant was that the property in question be used for residential purposes only. *Id.* at 841. The court acknowledged the purpose of the restriction was to keep the use of the lot residential, as opposed to commercial. *Id.* at 843. The evidence showed the property had been used for commercial purposes for more than four years. *Id.* at 841. The association's contention in *Sharpstown* that their lawsuit was not barred by the statute was limited to a contention that the use of two lots involved could be considered separately, and, because one of them had not been used commercially, there was no evidence that both lots had been used commercially; that the statute started to run again based upon a brief discontinuance of the commercial use of the lots; and that there was no evidence to support the jury's finding that the association waived enforcement of the restrictions. *Id.* The Court held the evidence supported jury findings that both lots had been used for non-residential purposes and that the lots had been used and maintained as one parcel since the non-residential use began, *Id.* at 842; that a one-week gap between the use of an office as a real estate office and its use as a car wash office did not cause the statute to run again, *Id.* at 844; and that there was evidence to show the association had waived enforcement of the covenant. *Id.* at 845–46. The case does not support the Bank's apparent argument that the statute of limitations runs from the date of an initial violation of the covenant, even though the covenant is still enforceable because the initial violation was

insignificant or insubstantial when compared with a subsequent proposed violation.

We note that in *Sharpstown* the original violation was substantial when compared to the proposed violation for it defeated the very purpose of the restriction, to preserve the property for residential, as opposed to commercial, use. In the case at bar, there appears to be no dispute that a major reason for the restriction is related to the visibility of Colton's property from the highway. There is no summary judgment evidence that the original violation completely destroyed the purpose of the restriction. As we have noted, there is a material fact issue in this case as to whether, with respect to the covenant and its purposes, the original violation was substantial or insubstantial when compared to the proposed violation. Inasmuch as we have held the issue of when limitations runs is determined by a resolution of this issue, there is a material fact issue with respect to the Bank's claim that any objection by Colton to its proposed expansion is barred by the statute of limitations.

In view of our determination that there are material fact issues relating to each of the bases the Bank asserts in support of its motion for summary judgment, we must conclude the trial court erred in granting summary judgment. We sustain all of Colton's points of error.

The Bank has requested that in the event it is successful in this appeal we sever its claim for attorney's fees and remand so the appropriate amount of attorney's fees for this appeal might be assessed. Because the Bank was unsuccessful in this appeal, we need not consider the Bank's request.

The judgment is reversed, and this cause remanded for trial.

REVERSED AND REMANDED.