COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-281-CV

 

 

MITCHELL MUSGROVE                                                       APPELLANTS

AND JULIAN ARD

 

                                                   V.

 

WESTRIDGE STREET                                                              APPELLEE

PARTNERS I, LLC

 

                                              ------------

 

           FROM THE 352ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








This is an appeal from a judgment denying
appellants Mitchell Musgrove and Julian Ard injunctive relief to enforce
restrictive covenants against proposed development by appellee Westridge Street
Partners I, LLC (Westridge).  In seven
issues, appellants contend that the developer failed to establish the
affirmative defenses of estoppel, abandonment, and changed conditions and that
the nonwaiver clause in the covenants precludes application of these
defenses.  We affirm.

                                          I.  Background

In 1946, the A.C. Luther Company platted Block 52
of the Ridglea Addition to the City of Fort Worth.  Block 52 runs north and south for about
seven-tenths of a mile and sits between Westridge Avenue and Ridglea Country
Club in West Fort Worth, off Camp Bowie Boulevard to the south.  Each party to this appeal owns property
situated within Block 52.

The original plat for Block 52 contained eight
single-family lots.  In connection with
the filing of the plat, A.C. Luther also filed an instrument entitled ADedication,@ which
contains restrictions for future construction within Block 52.  The restrictions at issue in this appeal
pertain to frontage, set-back, and the amount of free space between side
property lines:

FrontageCHomes are to be built
facing Westridge Avenue and have a presentable front to the golf course running
behind . . . .

 

Set-backCNo building can be built
closer to the adjoining street or streets than the building line shown on the
original plat . . . .

 

Free Space/Side YardCNo part of any residence
can be erected nearer than twenty feet from the side property line . . . .

 








In 1960, an apartment complex was built within
three of the original lots.  Instead of
single one-family residential structures only, this development caused two
original lots and part of a third to have an apartment complex with
twenty-eight individual units.  A
surveyor testified that all of these units violated the side yard and frontage
restrictions and that some violated the set-back restrictions.  Clay Brants, the real estate agent who formed
Westridge, testified that this development violated all three restrictions at
issue.  Almost twenty years later, the
apartments were converted to condominiums and remain there today.

In 1979, following a signed waiver of the
restrictions by A.C. Luther, the then-owners of two other lots in Block 52
constructed a garden home development, with fourteen garden homes on the two
lots.  This development resulted in
conversion of two original lots to lots with fourteen homes within eight separate
structures and seventeen separate garage outbuildings.  Brants testified that the homes were built in
violation of all three restrictions.  The
surveyor also testified that the garden home construction generally violated
the frontage restriction, that four of the eight structures violated the
set-back restrictions, and that the construction, based on aerial photographs,
appeared to violate the side yard restrictions. 
The garden homes remain there today.








In 1980, the City of Fort Worth, through the City
Plan Commission (the Commission), approved a plat adding seven lots to the
north end of Block 52.  Condominiums and
townhouses were constructed on these lots (and still exist today).  If the restrictions applied to these
additional lots, this development was in violation of the restrictions.[2]

In 1985, two of the replatted lots were again
replatted into seven smaller lots, on which more garden homes were built.  The surveyor testified that some of this
construction violated some of the restrictions.

By 2004, only four detached single-family
residences remained on Block 52.  The
owners of these lots were Ard, Musgrove, Larry Heppe, and Nick Acuff.  Ard=s home
and outbuildings violate the side yard restrictions.  Musgrove=s home
violates the side yard and set-back restrictions.








In late 2004, Ard approached Brants about an idea
that Ard had discussed with Heppe several times priorCto
either sell his property or develop another garden home project on his lot and
Heppe=s.  Brants and some business partners met with Heppe
and Acuff regarding the development idea. 
Brants then formed Westridge to accomplish this development.  Heppe and Acuff sold their lots to Westridge,
but Ard refused to do so.  Westridge
modified its development plans accordingly, tore down the houses on the lots
previously owned by Heppe and Acuff, and proceeded to seek approval from the
Commission for the garden home development project.  The Commission eventually approved Westridge=s
proposed replatting, and Westridge promptly filed the replat.

In late 2005, Westridge met with Musgrove about
the project.  Musgrove voiced no
objection to the proposed development and asked if Westridge was interested in
buying his property for $1 million. 
Westridge did not purchase Musgrove=s lot
but proceeded to market lots in the proposed development on the lots previously
owned by Heppe and Acuff.

In January 2006, appellants filed this action
against Westridge seeking an injunction to prevent the planned
development.  After a bench trial, the
trial court signed an order denying injunctive relief.  The trial court later filed findings of fact
and conclusions of law, and this appeal ensued.

                                     II.  Standard of Review








We review an order granting or denying injunctive
relief for an abuse of discretion.[3]  A trial court abuses its discretion when it
acts without reference to any guiding rules or principles or misapplies the law
to established facts.[4]  Although we do not review an order granting
or denying injunctive relief for legal and factual sufficiency of the evidence,
sufficiency of the evidence is a significant factor in determining whether the
trial court abused its discretion.[5]  If some evidence supports the trial court=s order,
the trial court does not abuse its discretion to the extent it is called upon
to resolve fact questions in deciding whether to grant or deny injunctive
relief.[6]








A trial court=s
construction of a restrictive covenant is reviewed de novo.[7]  Covenants restricting the free use of land
are not favored by the courts, but when they are confined to a lawful purpose
and are clearly worded, they will be enforced.[8]  All doubts must be resolved in favor of the
free and unrestricted use of the premises, and the restrictive clause must be
construed strictly against the party seeking to enforce it.[9]

                                            III.  Analysis

The parties do not contest that Westridge=s proposed
development would violate the restrictive covenants.  They join issue only as to whether Westridge
established its affirmative defenses against enforcement of the covenants.  If Westridge established any one of its three
affirmative defensesCabandonment, change of
conditions, and estoppelCthen the trial court properly
denied injunctive relief for appellants.[10]

A.     Abandonment and Waiver of
Restrictive CovenantsCApplicable
Law








The Supreme Court of Texas declared over fifty
years ago in Cowling v. Colligan that a court may refuse to enforce a
restrictive covenant Abecause of the acquiescence of
the lot owners in such substantial violations within the restricted area as to
amount to an abandonment of the covenant or a waiver of the right to enforce
it.@[11]  Cases subsequent to Cowling illustrate
that, in the context of restrictive covenants, the concepts of abandonment and
waiver go hand in handCa finding that a restriction has
been abandoned is essentially the same, and must have the same evidentiary
support, as a finding that the right to enforce the covenant has been waived.[12]








To establish the affirmative defense of
abandonment or waiver, the defendant Amust
prove that the violations are so great as to lead the mind of the average man
to reasonably conclude that the restriction in question has been abandoned.@[13]  In determining whether a restrictive covenant
has been abandoned or waived, the factors a court should consider include Athe
number, nature, and severity of the then[-]existing violation[s], any prior
acts of enforcement of the restriction, and whether it is still possible to
realize to a substantial degree the benefits intended through the covenant.@[14]  The failure of property owners to object to
trivial violations does not preclude enforcement of the covenant.[15]  On the other hand, an abandonment or waiver
finding should be sustained where the party resisting enforcement of the covenant
presents proof that the violations then existing were so extensive and material
as to reasonably lead to the conclusion that the restrictions had been
abandoned or waived.[16]








In analyzing whether there has been an
abandonment or waiver of a restrictive covenant, courts do not limit their
focus to the actions, inactions, or subjective intent of any one party affected
by the restrictions.  Rather, they should
consider the equities of the entire situation,[17]
including but not limited to the nature and severity of past violations
relative to the restriction sought to be enforced,[18]
the extent to which the person attempting to enforce the restriction relied on
the restriction in purchasing the property,[19]
and the number of properties subject to the restriction relative to the number
of violations.[20]








B.     Effect of Nonwaiver
Provision on Abandonment and Waiver Defense

The restrictive covenants contain the following
nonwaiver clause:

[F]ailure of [A.C.
Luther] or the owner or owners of any other lot or lots [in Block 52] to
enforce any of the restrictions or covenants herein set forth at the time of
its violation shall in no event be deemed to be a waiver of the right to do so
at any time thereafter.

 

Appellants argue in their second issue that this nonwaiver provision
precludes Westridge=s abandonment/waiver defense as
a matter of law.  Westridge responds that
nonwaiver provisions are irrelevant to the issue of whether a restriction has
been abandoned and that in any event appellants waived the nonwaiver provision.

1.     Enforceability
of Nonwaiver Provision

Nonwaiver clauses or provisions are generally
enforceable in Texas.[21]  Moreover, Texas courts have treated nonwaiver
provisions in restrictive covenants as enforceable.








In TX Far West, Ltd. v. Texas Investments
Management, Inc., the Austin Court of Appeals considered a restrictive
covenant requiring, among other things, payment of annual maintenance fees.[22]  Citing a nonwaiver provision, the Austin
court reversed a summary judgment that the covenant had been waived and
remanded for further proceedings, holding that the prior owners=
acquiescence in alleged violations of the covenant did not establish waiver as
a matter of law.[23]

Similarly, in Simms v. Lakewood Village
Property Owners Ass=n, a
party resisted payment of maintenance fees required by a restrictive covenant
on the ground that the restrictions had been abandoned.[24]  The Corpus Christi Court of Appeals held that
some evidence supported the trial court=s
conclusion that the general scheme and plan for the subdivision had been
followed and that, therefore, the restrictions had not been waived or
abandoned.[25]  The Simms court cited a nonwaiver
provision in the restrictive covenant, stating that the provision Awas
included in the covenant to protect [against] any claims that the covenant had
been waived or abandoned because of a failure to prosecute prior violations.@[26]








2.     Waiver
of Nonwaiver Provision

The fact that nonwaiver provisions may be
enforceable in Texas, however, does not resolve the issue here, which is
whether the nonwaiver provision at issue was itself waived.  Like other contractual provisions, nonwaiver
provisions can be waived.[27]  And neither TX Far West nor Simms
holds, as appellants ask this court to hold, that the existence of a nonwaiver
provision precludes a finding of abandonment and waiver as a matter of
law.  Far from declaring that a nonwaiver
provision conclusively resolved the issue, the TX Far West court held
that the existence of the nonwaiver provision raised a fact issue on waiver.[28]  And Simms suggests that restrictive
covenants can be waived, despite the existence of a nonwaiver provision, when
there is evidence that violations of the covenants subvert the general scheme
or plan.[29]








Neither party cites, and our research has not
uncovered, any Texas case that specifically addresses the issue of whether a
nonwaiver provision in a restrictive covenant is waived when the restrictions
have been abandoned.  We agree, however,
with the holding of the Arizona court of appeals in Burke v. Voicestream
Wireless Corp. II[30]
that a Anon‑waiver
provision would be ineffective if a complete abandonment of the entire set of
[r]estrictions has occurred.@[31]  Such an abandonment has occurred, according
to the Arizona court, when the violations are so pervasive that they have Adestroyed
the fundamental character of the neighborhood.@[32]  To determine whether the trial court erred by
holding that the nonwaiver provision has been waived, then, we must examine the
record to see if there is evidence of abandonment, that is, of violations so
pervasive that the trial court could reasonably have determined that the
fundamental character of the neighborhood had been destroyed.

3.     Evidence
Supporting Trial Court=s
Abandonment Conclusion








We review the trial court=s
abandonment conclusion based on three factors: 
the number, nature, and severity of the then-existing violations; any
prior acts of enforcement of the restriction; and whether it is still possible
to realize to a substantial degree the benefits intended through the covenant.[33]








Applying these factors, first, there is evidence
of a significant number of substantial violations of the restrictions.[34]  Four of the original eight lots contained
apartment buildings and garden homes instead of one single-family residence as
was contemplated in the original plat in 1946.[35]  Westridge presented evidence that most of the
structures built on these four lots violated one or more of the
restrictions.  Specifically, there was
evidence that (1) all of the construction on three of the original lotsCthe
apartment buildingsCviolated the side yard and
frontage restrictions and that some of this construction violated the set-back
restrictions; (2) construction on two of the original lotsCthe
garden homesCgenerally violated the frontage
restriction, appeared to violate the side yard restriction, and half violated
the set-back restrictions; and (3) the homes of both appellants violated the
side yard restrictions, and the home of one of the appellants also violated the
set-back restrictions.[36]

Moreover, this evidence supports a finding that
the fundamental character of the neighborhood has been abandoned.[37]  The restrictions at issue are part of a
cluster of covenants that include the declaration that A[n]o . .
. apartment house . . . and no building of any kind whatsoever shall be erected
or maintained thereon except private dwelling houses . . . [denoted] and
designed for occupancy by a single family only.@  The trial court could reasonably have
inferred from the evidence, including this covenant, that the restrictions on
set-backs, frontages, and side property lines were part of an overall intent to
preserve Block 52 as eight lots each with only a single one-family residence.  But by 1985, Block 52 had primarily become
condominiums, townhouses, and garden homes, undercutting the essential purpose
underlying the restrictions and destroying the fundamental character of Block
52 as contemplated by the restrictive covenants generally.  This factor weighs heavily in favor of the
abandonment conclusion.








Second, appellants presented no evidence of any
prior attempts to enforce the restrictions.[38]  There was evidence that A.C. Luther waived
the restrictions with regard to the 1979 garden home development on two of the
original lots, but there is no evidence that any other property owner within
the restricted area, including appellants, objected to this waiver or otherwise
ever attempted to enforce the restrictions. 
This factor weighs in favor of the abandonment conclusion.

Third, the trial court found that Westridge=s
proposed development would have a substantially different effect on appellants
than previous violations of the restrictions and that appellants would realize
substantial benefits from enforcement of the restrictions.  Westridge does not contest these
findings.  This factor weighs against the
abandonment conclusion.








Finally, we note that appellants presented no
evidence that they purchased their properties in reliance on the
restrictions.  To the contrary,
appellants did not know the restrictions existed until they began to pursue
litigation to prevent Westridge=s
proposed development.  Bearing in mind
that courts must balance the equities favoring the lot owner in violation of
restrictive covenants against lot owners who acquire their property on the
strength of the restrictions,[39]
we conclude that the trial court did not err by holding that the restrictions
were abandoned.

Appellants emphasize the trial court=s
finding that neither of them intentionally waived their right to enforce the
restrictions.  Appellants=
individual intent, however, is relevant to the abandonment analysis only to the
extent that they purchased in reliance on the restrictions (which they did not)
and that they attempted to previously enforce the restrictions (which they did
not).  Because we reject appellants=
argument that a nonwaiver provision defeats an abandonment defense as a matter
of law, and because evidence of substantial violations so pervasive that the
fundamental nature and character of the neighborhood has been abandoned is also
evidence that a nonwaiver provision has been abandoned, we cannot say that the
trial court erred in holding that appellants waived the nonwaiver provision.  We overrule appellants= second
issue.

C.     Effect
of Findings of ASubstantial Benefit@ and ASubstantially Different
Effect@

 








In their third and fourth issues, appellants
argue that the trial court=s
findingsCthat
Westridge=s proposed development will have
a Asubstantially
different effect@ on appellants=
properties than prior violations of the restrictions and will materially affect
appellants= enjoyment of their propertiesCpreclude
the trial court=s abandonment conclusion as a
matter of law.  But these factors are
not, standing alone, dispositive of the issue as a matter of law.  The trial court must weigh all the factors and
balance all the equities in determining whether there has been an abandonment
of the restrictions.[40]








Appellants rely on the Supreme Court of Texas=s
decision in Sharpstown in asserting that an abandonment or waiver
finding is erroneous as a matter of law when the proposed use is substantially
different in its effect than prior violations. 
In Sharpstown, however, the supreme court held only that a
comparatively minor violation of a residential-only restrictionCuse of a
single property as an office buildingCwould
not support a holding that the residential-only restriction is abandoned for
any proposed future use, including a commercial car wash.[41]  The supreme court reasoned that to so hold
would mean that use of a residential property to give piano lessons would mean
any property owner could subsequently convert his property into a service
station, a result the court deemed unreasonable.[42]  Importantly, however, the court held that the
party seeking to enforce the residential-only restriction did waive that
restriction Aas to the use of [the property]
for the purposes for which it was used [i.e., as an office building] from 1970
until purchased by [the party seeking to avoid the restriction] in November of
1979.@[43]  In other words, a restriction can be waived
to the extent it is violated, even if a more expansive Awaiver@ would
not be supported by the evidence.

Here, the record discloses evidence not merely of
a single violation of the restrictions, like in Sharpstown, but of
ongoing material violations of the restrictions that fundamentally changed the
character of the planned development. 
Under these circumstances, the trial court could reasonably have
concluded that (1) the proposed development immediately adjacent to appellants=
properties would have a substantially different effect than earlier violations
farther from appellants= properties and enforcing the
restrictions would substantially benefit appellants, but (2) nevertheless the
restrictions have been abandoned based on the totality of the circumstances and
the balancing of equities.  We overrule
appellants= third and fourth issues.








                                          IV.  Conclusion

For the foregoing reasons, we affirm the trial
court=s
judgment.[44]

 

 

PER
CURIAM

 

 

PANEL:  CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED:  April 9, 2009











[1]See Tex. R. App. P. 47.4.





[2]Appellants urge that any
development outside the original eight lots is immaterial to the issues in this
case.  Without deciding whether this is
correct, we have limited our review of the trial court=s judgment and findings
of fact and conclusions of law to evidence regarding the original eight lots.





[3]See Operation Rescue-Nat=l v. Planned Parenthood
of Houston & Se. Tex., Inc., 975 S.W.2d 546, 560 (Tex. 1998).





[4]See Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985).





[5]See Crouch v. Tenneco,
Inc.,
853 S.W.2d 643, 646 (Tex. App.CWaco 1993, writ denied).





[6]See Davis v. Huey, 571 S.W.2d 859, 862
(Tex. 1978).





[7]See Pilarcik v. Emmons, 966 S.W.2d 474, 478
(Tex. 1998).





[8]See Wilmoth v. Wilcox, 734 S.W.2d 656, 657
(Tex. 1987); Davis v. Huey, 620 S.W.2d 561, 565 (Tex. 1981).





[9]See Wilmoth, 734 S.W.2d at 657; Settegast
v. Foley Bros. Dry Goods Co., 114 Tex. 452, 455, 270 S.W. 1014, 1016
(1925).





[10]Cf. Tony Gullo Motors I,
L.P. v. Chapa, 212 S.W.3d 299, 314 (Tex. 2006) (noting that Ato prevail on a . . .
claim[,] a party must overcome any and all affirmative defenses@).





[11]Cowling v. Colligan, 158 Tex. 458, 461B62, 312 S.W.2d 943, 945
(1958).





[12]See, e.g., Jim Rutherford
Invs., Inc. v. Terramar Beach Cmty. Ass=n, 25 S.W.3d 845, 852
(Tex. App.CHouston [14th Dist.]
2000, pet. denied) (A[T]o establish . . .
waiver in a deed restriction case, the non-conforming user must prove that the
violations then existing are so great as to lead the average man to
[reasonably] conclude [that] the restriction in question [has] been abandoned
and its enforcement waived.@); Pebble Beach Prop. Owners= Ass=n v. Sherer, 2 S.W.3d 283, 289B90 (Tex. App.CSan Antonio 1999, pet.
denied) (ATo satisfy [the] burden
[for proving waiver], Sherer must prove the violations then existing were so
extensive and material as to reasonably lead to the conclusion that the
restrictions had been abandoned.@); Traeger v. Lorenz, 749 S.W.2d 249, 250B51 (Tex. App.CSan Antonio 1988, no
writ) (holding that party was entitled to single jury question on abandonment
and waiver).





[13]Tanglewood Homes Ass=n, Inc. v. Henke, 728 S.W.2d 39, 43 (Tex.
App.CHouston [1st Dist.] 1987,
writ ref=d n.r.e.) (abandonment); see
also  Hicks v. Loveless, 714
S.W.2d 30, 35 (Tex. App.CDallas 1986, writ ref=d n.r.e.) (stating
identical test for establishing waiver).





[14]Tanglewood, 728 S.W.2d at 43B44 (abandonment)
(internal quotation omitted); see also Pebble Beach, 2 S.W.3d at 289B90 (waiver and abandonment);
Hicks, 714 S.W.2d at 35 (waiver).





[15]See Sharpstown Civic Ass=n, Inc. v. Pickett, 679 S.W.2d 956, 958
(Tex. 1984); Pebble Beach, 2 S.W.3d at 290; Hicks, 714 S.W.2d at
34B36.





[16]See Pebble Beach, 2 S.W.3d at 290; Dempsey
v. Apache Shores Prop. Owners Ass=n, 737 S.W.2d 589, 594 (Tex. App.CAustin 1987, no writ); Tanglewood,
728 S.W.2d at 43B44; Hicks, 714
S.W.2d at 35.





[17]See Cowling, 158 Tex. at 462B63, 312 S.W.2d at 946
(stating that in deciding restrictive covenant case, court=s Ajudgment must arise out
of a balancing of equities or of relative hardships@); Gigowski v. Russell,
718 S.W.2d 16, 22 (Tex. App.CTyler 1986, writ ref=d n.r.e.) (AIn determining whether it
would be inequitable to enforce a restrictive covenant against a particular lot
owner, we must weigh the equities of the owner in violation of the covenant
against the equities favoring other lot owners who acquired their property on
the strength of the restriction.@).





[18]See Sharpstown Civic Ass=n, 679 S.W.2d at 958
(enforcing residential-only restriction when prior violationCsmall office buildingCwas insignificant
compared to proposed useCcommercial car wash); Cowling,
158 Tex. at 462B63, 312 S.W.2d at 946B47 (enforcing
residential-only restriction when  only
past violation was Aadvent of churches into
the subdivision@); Hicks, 714
S.W.2d at 34B36 (holding that past
violations of residential-only restriction were minor when compared to use of
property for machine shop).





[19]See, e.g., Ski Masters of Tex.,
LLC v. Heinemeyer, 269 S.W.3d 662, 672B73 (Tex. App.CSan Antonio 2008, no pet.) (enforcing restrictive
covenant in part because of evidence that parties seeking to enforce
residential-only restriction presented evidence of reliance on restriction when
purchasing property); Simms v. Lakewood Vill. Prop. Owners Ass=n, 895 S.W.2d 779, 786B87 (Tex. App.CCorpus Christi 1995, no
writ) (enforcing restrictive covenants where parties seeking to enforce relied
on restrictions in purchasing property).





[20]See Tanglewood, 728 S.W.2d at 44
(holding that (1) evidence of fifteen violations of set-back restriction for
garages and carports out of fifty-six total properties subject to set-back
restriction is sufficient to support jury finding of abandonment of that
restriction, but (2) five minor violations of set-back restriction for main
residence will not support waiver finding); see also Jim Rutherford Invs.,
25 S.W.3d at 852 (holding that evidence of only one violation of set-back
restriction will not support abandonment finding); Pebble Beach, 2
S.W.3d at 290B91 (holding that evidence
of fourteen violations of covenant prohibiting trailers and mobile homes out of
approximately 800 lots will not support abandonment finding).





[21]See, e.g., A.G.E., Inc. v.
Buford, 105 S.W.3d 667, 676 (Tex. App.CAustin 2003, pet. denied); Straus v. Kirby
Court Corp., 909 S.W.2d 105, 108 (Tex. App.CHouston [14th Dist.]
1995, writ denied).





[22]127 S.W.3d 295, 298B99 (Tex. App.CAustin 2004, no pet.).





[23]Id. at 306.





[24]895 S.W.2d at 786B87.





[25]See id.





[26]Id. at 787.





[27]See A.G.E., 105
S.W.3d at 676; Straus, 909 S.W.2d at 108; Winslow v. Dillard Dep=t Stores, Inc., 849 S.W.2d 862, 863B64 (Tex. App.CTexarkana 1993, writ
denied).





[28]127 S.W.3d at 306.





[29]895 S.W.2d at 786B87.  Equally important in Simms was the
fact that many lot owners had purchased in reliance on the restrictions.  See id.  (ATo hold [that the restrictions were waived] would
be an injustice to the many lot owners who purchased their property in reliance
upon the protection afforded by the covenants and are still relying upon that
protection.@).





[30]87 P.3d 81 (Ariz. Ct.
App. 2004).





[31]Id. at 87.





[32]Id.; see also Venture Out
at Mesa, Inc. v. Osburn, 2008 WL 4182858, at *7 (Ariz. Ct. App. 2008)
(holding that tenant did not establish waiver of nonwaiver provision when
homeowners= association sought to
enforce age restriction and there was no evidence that restrictions generally
had been abandoned such that fundamental character of development had changed).





[33]See Pebble Beach, 2 S.W.3d at 290B91; Tanglewood,
728 S.W.2d at 43B44.





[34]See Cowling, 158 Tex. at 462B63, 312 S.W.2d at 945B46; Tanglewood,
728 S.W.2d at 43B44.





[35]See Tanglewood, 728 S.W.2d at 44
(holding that evidence of violations of set-back restrictions on fifteen out of
fifty-six properties will support abandonment finding).





[36]See Pebble Beach, 2 S.W.3d at 290B91; Tanglewood,
728 S.W.2d at 43B44.





[37]See Burke, 87 P.3d at 87; cf.
Simms, 895 S.W.2d at 786B87 (affirming holding of no abandonment or waiver
where there was Aevidence that the general
scheme and plan of the subdivision has been followed@).





[38]See Cowling, 158 Tex. at 462B63, 312 S.W.2d at 945B46; Tanglewood,
728 S.W.2d at 43B44.





[39]See supra n.17.





[40]See supra nn.12B19.





[41]679 S.W.2d at 958.





[42]See id.





[43]Id.





[44]Because of our
disposition of the abandonment and waiver issues, we need not reach appellants= other issues regarding
changed conditions and estoppel.  See
Tex. R. App. P. 47.1.