Cullas M. HICKS and Sesselja H. Hicks, Appellants,

v.

Eric Lynn LOVELESS and Jan A. Loveless, Appellees.

No. 05–85–00767–CV.

Court of Appeals of Texas, Dallas.

May 7, 1986.

Rehearing Denied June 12, 1986.

Hal Hughes, Ingram Lee, III, Charles Sartain, Dallas, for appellants.

Marshal W. Dooley, Barbara St. Clair, Dallas, for appellees.

Before VANCE, DEVANY and SCALES, JJ.

SCALES, Justice.

Cullas M. and Sesselja H. Hicks (collectively, "Hicks") appeal from the trial court's judgment in favor of appellees, Eric Lynn and Jan A. Loveless (collectively, "Loveless"), defendants below. Hicks, two of the original five plaintiffs in the trial court, brought suit seeking injunctive relief against Loveless alleging that Loveless was violating the deed restrictions applicable to the residential subdivision in which all the parties reside. Loveless pleaded waiver and counterclaimed for injunctive relief against those plaintiffs who were also allegedly violating the deed restrictions. The trial court entered findings of fact and conclusions of law and rendered judgment denying relief to all parties. Hicks appeals and presents three points of error, contending that (1) the restrictions apply to the Loveless lot; and (2) the operation of a machine-shop on the Loveless lot violates the restrictions. By cross-point, Loveless asserts that even if the restrictions apply to his lot and his activities constitute a "business," Hicks has waived his right to enforce the restrictions by acquiescing in other violations of the restrictions in the neighborhood. We agree with Hicks's contentions.

Hicks and Loveless own adjoining lots in a residential subdivision originally owned, developed, and subdivided by Harold Spence. Spence drafted deed restrictions to be imposed on all the lots which provide, in pertinent part:

4. No business or commercial pursuits, whether retail or wholesale, shall be permitted on the premises of any lot, and no advertising sign will be permitted to be displayed in conjunction with same.

\* \* \* \* \* \*

8. These restrictions are for the benefit and protection of each lot owner and to maintain the property value.

\* \* \* \* \* \*

10. Enforcement of these restrictions shall be by proceeding at law or in equity ... and said proceeding may be filed by the developer or any lot owner.

The first lot sold in the development was purchased by James and Barbara Wallace (collectively, "Wallace"), Loveless's predecessor in interest, in 1978. The deed conveying the property from Spence to Wallace recited:

This conveyance is made subject to the following matters, to the extent same are in effect at this time: Any and all restrictions, covenants, conditions, easements and reservations, if any, relating to the hereinabove described property, *but only to the extent they are still in effect, [and] shown of record,* in hereinabove mentioned County and State...

(emphasis added). It is undisputed that the deed restrictions were not of record when the Spence-to-Wallace deed was executed. The restrictions and the Spence-to-Wallace deed were subsequently filed of record in Dallas County on August 29, 1978; the file-stamps show that the restrictions were filed at 1:35 p.m. and the deed was filed at 1:40 p.m. Wallace subsequently conveyed this lot to Loveless in 1980. Hicks purchased the lot adjoining Loveless's lot sometime after 1980; in December 1984, Hicks's home was still under construction.

In July, 1984, Loveless moved eleven tons of machinery into a 1,080-square-foot out-building which he had constructed on the back of his lot. Several neighbors delivered a letter to Loveless informing him that his building and his business operation were in violation of the deed restrictions. This lawsuit ensued.

We must first determine whether the deed restrictions apply to Loveless's lot. This question is answered, in part, by whether the restrictions burdened the title of Loveless's predecessor in interest, Wallace. If Wallace purchased the lot without notice of the restrictions, then the restrictions would not burden his title, and Loveless, as a bona fide purchaser, would succeed to Wallace's property rights, even if Loveless did have notice of the restrictions. *See Slaughter v. Qualls*, 149 S.W.2d 651, 657 (Tex.Civ.App.—Amarillo 1941), *aff'd*, 139 Tex. 340, 162 S.W.2d 671 (1942). The question, then, is whether Wallace had notice of the restrictions at the time he purchased the property.

The record reflects that both the Spence-to-Wallace deed and the deed restrictions were executed at the "closing" on August 25. Gardner, the title company representative, testified that she acknowledged the deed and the restrictions, after the parties signed in her presence at the closing. She stated that the usual procedure, "when the restrictions and the first house are a simultaneous thing," was that she would make the purchaser aware of the restrictions and provide him with copies.

The developer, Spence, testified that on August 25 he told Wallace about the restrictions: "I just went over them basically...." Spence stated that he did not recall going over each restriction with Wallace, and Spence did not believe that he specifically mentioned the restriction regarding businesses to Wallace. Spence stated that Wallace had no objections to the restrictions. Spence also testified that he executed the restrictions before executing the deed to Wallace, and that Wallace was present when he executed the deed restrictions.

▬ We first consider the date on which Wallace purchased the lot, in order to determine whether he had notice of the restrictions at or before the time he purchased. The trial court, in its findings of fact and conclusions of law, found that the Spence-to-Wallace "conveyance" was "completed" on August 25. We construe this finding, which the trial court denominated as a conclusion of law, as a finding that delivery of the deed occurred and title was transferred on August 25. It is well settled that a conveyance is effective and title is transferred upon execution and delivery of the deed. *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974). "Delivery" occurs when the deed is placed within the grantee's control for the purpose of having it become operative as a conveyance, and with the grantor's intention to relinquish control of the deed to the grantee. *Pelican Oil & Gas Co. v. Edson Petroleum Co.*, 123 S.W.2d 696, 698 (Tex. Civ.App.—Texarkana 1939, no writ). The law presumes that delivery occurred on the date the deed was executed, in the absence of evidence to the contrary. *Lichtenstein v. F & M National Bank of Kaufman*, 372 S.W.2d 716, 718 (Tex.Civ.App.—Dallas 1963, no writ). Here, there is evidence that the deed was delivered on August 25, not August 24, the date of execution shown on the deed. Based on the uncontroverted testimony of Gardner and Spence, we hold that delivery of the deed occurred on August 25 and thus, that Wallace "purchased" the lot on August 25.

We next consider whether Wallace had notice of the restrictions when he purchased the lot on August 25. The trial court concluded that, as a matter of law, the deed restrictions do not apply to the lot because they were not of record at the time Wallace purchased the lot from Spence. We agree that the restrictions were not of record at the time Wallace purchased the lot; therefore, Wallace did not have *constructive* notice of the restrictions. The general rule, however, is that a purchaser is bound by those restrictive covenants attaching to the property of which he has constructive *or actual* notice. *Davis v. Huey*, 620 S.W.2d 561, 565–66 (Tex.1981). Thus, the question is whether Wallace had actual notice of the restrictions at the time he purchased the lot.

Actual notice "is said to exist where the party to be affected by it is proved to have had actual knowledge of the fact; where knowledge of it is brought directly home to him by the evidence." *Wethered v. Boon*, 17 Tex. 143, 150 (1856). In *Hexter v. Pratt*, 10 S.W.2d 692 (Tex. Comm'n App. 1928, holding approved), the court defined actual notice as follows:

> In common parlance "actual notice" generally consists in express information of a fact, but in law the term is more comprehensive. In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained.... So that, in legal parlance, actual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed.

*Id.* at 693, quoted with approval in *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 388 (Tex.1965).

In *Popplewell v. City of Mission*, 342 S.W.2d 52, 53 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.), the court addressed a factual situation similar to ours. In *Pop-plewell*, the appellee argued that the recording of a *plat*, on the same day the deed was acknowledged but one day after the deed was executed, constituted constructive notice to the purchasers. The court rejected this contention, finding that the date of the deed was presumptively the date of delivery, without evidence to the contrary, and that the plat did not give constructive notice until it was recorded. *Id.* at 56. The court also noted that the purchasers bought the land "without any *actual* knowledge of the *existence* of the unrecorded plat." *Id.* (emphasis added). Here, however, there is uncontroverted evidence that Wallace had actual notice of the existence of the restrictions and that he had an opportunity to read them before executing his deed.

In this case, the trial court did not enter a finding of fact as to whether Wallace had *actual* notice of the restrictions. Ordinarily, actual notice is a question of fact, *Hexter*, 10 S.W.2d at 693, but actual notice becomes a question of law where there is no room for reasonable minds to differ as to the proper conclusion to be drawn from the evidence. *O'Ferral v. Coolidge*, 149 Tex. 61, 228 S.W.2d 146, 148 (1950). Based on the uncontroverted evidence presented at trial, we hold that Wallace had actual notice of the restrictions at the time he purchased the lot, and that reasonable minds could not differ as to this conclusion. *See Id.* at 148. We further hold that because Wallace had *actual* notice of the existing, unrecorded, deed restrictions at the time he purchased the lot, the deed restrictions burdened the property notwithstanding the deed's recital that it is subject to the restrictions "of record." Therefore, we hold the trial court's conclusion of law that the restrictions do not apply to the Wallace-Loveless lot is incorrect as a matter of law. *See Harry Hines Medical Center, Ltd. v. Wilson*, 656 S.W.2d 598, 603 (Tex.App.—Dallas 1983, no writ) ("it is our duty to review the correctness of the legal conclusions").

Loveless argues that because the Spence-to-Wallace deed was executed before the

restrictions were filed of record, the restrictions are not in Loveless's chain of title, and therefore, they do not apply to Loveless, even if they did apply to Wallace. This contention is without merit. Loveless is charged with constructive notice of all instruments in his chain of title and of all instruments to which his chain of title refers. *Smith v. Bowers*, 463 S.W.2d 222, 224–25 (Tex.Civ.App.—Waco 1970, no writ); *Steed v. Crossland*, 252 S.W.2d 784, 786–87 (Tex.Civ.App.—Beaumont 1952, writ ref'd). The Spence-to-Wallace deed is clearly in Loveless's chain of title, and that deed refers to "any and all restrictions ... shown of record." At the time Loveless purchased the lot, the restrictions were filed of record. Thus, Loveless had constructive notice of the restrictions.

We hold that Wallace had actual notice of the existing, unrecorded, deed restrictions at the time he purchased the lot; that the actual notice of the restrictions operated to burden the lot with the restrictions, notwithstanding the deed recital that it was subject to all restrictions "of record"; and that Loveless purchased the lot from Wallace with constructive notice of the restrictions. Thus, we hold that the restrictions burden Loveless's lot, and we sustain Hicks's first point of error.

We next consider whether Loveless is conducting a business or commercial pursuit within the meaning of the deed restrictions. The record reflects that in June or July of 1984, Loveless closed his machine-shop in Garland and moved his equipment to the out-building on his lot. The machinery weighs 21,950 pounds. Photographs contained in the record show the machinery being unloaded by a forklift from a large, flat-bed, trucking rig. At trial, Loveless described his operation as building precision machine parts. He "basically" has three customers. He receives orders from his customers on the telephone, and then he goes to customer's location for specifications and blueprints. He manufactures the part in his out-building and then delivers it to the customer in his pick-up truck. Loveless testified that "almost all" of his income is derived from the machine-shop activities conducted in the out-building on his lot. Loveless stated that he does not intend to expand his business or hire any employees.

The deed restriction at issue prohibits "business or commercial pursuits, whether retail or wholesale, ... on the premises of any lot." The trial court entered a finding of fact that the "activity conducted by Loveless" on his lot is not a business or commercial pursuit, and a conclusion of law that the activity conducted by Loveless on his lot is not in violation of the deed restrictions.

The general rule is that restrictions on the use of property should be construed in favor of the grantee and against the grantor, and any ambiguity in the restrictions should be construed in favor of the free and unrestricted use of the property. *Davis v. Huey*, 620 S.W.2d 561, 565 (Tex.1981); *MacDonald v. Painter*, 441 S.W.2d 179, 183 (Tex.1969). Restrictive covenants will be enforced, however, when the restrictions are for a lawful purpose and "the language employed is clear." *Davis*, 620 S.W.2d at 565. We should construe the restriction according to the ordinary and commonly accepted meaning of the words used in the restriction, *Stephenson v. Perlitz*, 532 S.W.2d 954 (Tex.1976), and in light of the obvious purpose and intent of the restrictions. *Pardo v. Southampton Civic Club*, 239 S.W.2d 141, 143 (Tex.Civ.App.—Galveston 1951, writ ref'd).

In this case, the restriction prohibits "business or commercial pursuits, whether retail or wholesale." This language reveals an attempt to define "business" as broadly as possible. This Court has defined "business" as "any particular employment, occupation, or profession followed as a means of livelihood; in this sense, the word has been defined in general as meaning calling, employment, trade or avocation." *Connor v. City of University Park*, 142 S.W.2d 706, 715 (Tex.Civ.App.—Dallas 1940, writ ref'd). In light of the expressed intent of the restrictions, to benefit and protect each lot owner and to main-

tain property values, and the deed restrictions viewed as a whole, the obvious intent of the restriction is to preserve the residential character of the subdivision. Based on the undisputed evidence in the record regarding the nature of Loveless's activities, we hold that, as a matter of law, the restriction prohibiting "business or commercial pursuits, whether retail or wholesale" applies to and prohibits Loveless's activities. Hicks's second point of error is sustained.

In his cross-point, Loveless argues that, even if this Court holds that the restrictions apply to his lot and that his activities are a "business or commercial pursuit," the restrictions should not be enforced against him because Hicks has waived his right to enforce the deed restrictions by acquiescing in other violations of the restrictions.

 The Texas Supreme Court has stated the test for waiver as follows:

> [I]n order to support a waiver of residential restrictions the proposed use must not be substantially different in its effect on the neighborhood from any prior violation. To put it another way, the prior violation which has been carried on without objection, if insignificant or insubstantial when compared to the proposed or new use, will not support a waiver of the new and greater violation.

*Sharpstown Civic Association, Inc. v. Pickett,* 679 S.W.2d 956, 958 (Tex.1984); *see also Stewart v. Welsh,* 142 Tex. 314, 178 S.W.2d 506, 508–09 (1944). The defendant has the burden to prove that the other existing violations are so great as to lead the "average man" to reasonably conclude that enforcement of the restriction has been waived. *Finkelstein v. Southampton Civic Club,* 675 S.W.2d 271, 278 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The factors to be considered are: the number, nature, and severity of the existing violations; prior acts of enforcement of the restrictions; and whether it is still possible to realize to a substantial degree the benefits intended by the restrictions. *Id.*

 The record reflects that several instances of possible violations of the restrictions have occurred in the subdivision. The restrictions also prohibit "temporary structures"; barns which are incompatible, in construction materials and type, with the main residence; wire fences; and abandoned vehicles. At trial, Loveless introduced into evidence several photographs depicting other lots in the neighborhood. The photographs show various portable, metal "out-buildings" on several lots; four, purportedly "abandoned" vehicles parked at the back of the driveway on one lot; a temporary dog pen in front of one house; and a large barn on the lot owned by one of the original plaintiffs in this suit. The testimony also reflects that one house in the neighborhood violates the 50–foot setback requirement by 3.5 feet. There are no purported incidents of businesses being operated in the subdivision.

It also appears from the record that Loveless had a small machine-shop in his garage from the time he moved in, sometime in 1980, until mid–1981. However, none of the neighbors who testified knew about this operation prior to this suit. Loveless also testified that in 1981, neighbors complained to him about a wrecked car sitting on his lot, which he explained was on his lot in connection with his "accident reconstruction" consulting work. Loveless stated that after he was notified of the deed restriction, he removed the vehicle.

There was also testimony which reflected that operation of Loveless's machine-shop diminishes property values in the neighborhood and that Loveless's machine-shop has a greater impact on property values and the residential character of the neighborhood than other purported restriction violations. Spence testified that Loveless's shop is "a commercial-type operation" that affects the neighborhood because the "difference between residential and commercial is a different atmosphere." Hicks, whose home is next door to Loveless's, testified

that he found large chunks of unidentifiable metal in his yard which he returned to Loveless.

The trial court did not make any findings as to whether the restrictions had been waived. After reviewing the record, we conclude that the other, existing, restriction violations in the neighborhood do not show a waiver by Hicks of the restrictions. The evidence of other restriction violations reflects minor violations which are compatible with a residential neighborhood and which are trivial as compared to the operation of a machine-shop. The Loveless business, on the other hand, is a substantial violation which materially affects Hicks's enjoyment of his premises for residential purposes. *See First State Bank of Corpus Christi v. James*, 471 S.W.2d 868, 874 (Tex.Civ.App.—Corpus Christi 1971, no writ). The testimony reflects that Loveless's machine-shop has a substantially different effect on the neighborhood than that of any other violation. *See Sharpstown*, 679 S.W.2d at 958. The record also shows that there has been at least one prior act of enforcement of the deed restrictions. Moreover, one of the primary purposes of the restrictions, to preserve the residential character of the neighborhood, may still be realized by enforcement of the restriction against Loveless. Thus, we hold that Loveless did not carry his burden to prove that Hicks waived his right to enforce the restrictions, and we overrule Loveless's crosspoint.

Accordingly, we reverse the judgment of the trial court and render judgment for Hicks, granting a permanent injunction against Loveless, their agents, servants, and employees, from operating or conducting a business or commercial pursuit on the subject lot for as long as the deed restrictions are in effect. We remand the case to the trial court for a determination of reasonable attorney's fees to be awarded to Hicks pursuant to section 5.006 of the Texas Property Code. TEX.PROP.CODE ANN. § 5.006 (Vernon 1984).