

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00050-CV

_____

IN RE:
SAMSON LONE STAR, LLC

Original Mandamus Proceeding

Before Morriss, C.J., Carter and Cornelius, *JJ.
Memorandum Opinion by Justice Carter

_____
*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

Melba Faye Smith and Michael Edward Smith (Smith) brought suit against Samson Lone Star, LLC (Samson), alleging breach of contract. In the course of discovery, Samson objected to Request for Production No. 11, asserting that the information sought was a trade secret. Smith argued that the information was not a trade secret and that because Samson had inadvertently produced an analysis regarding "proved developed reserves" in the Hancock-Smith Unit, Samson had waived the trade secret privilege regarding all reserves within that unit. The trial court ordered Samson to produce "all documents responsive" to Request No. 11.

Here, Samson argues the trial court abused its discretion by: (1) finding that Samson waived its trade secret privilege when it disclosed the Reserve Analysis; (2) erroneously overruling Samson's assertion of trade secret privilege to Request No. 11; and (3) failing to order Smith to return the Reserve Analysis to Samson. Samson prays that we vacate the trial court's order and direct the trial court to enter an order upholding the trade secret privilege and returning the inadvertently produced document.

The order is overbroad and indefinite and therefore constitutes an abuse of discretion. We conditionally grant the petition for writ of mandamus.

I.      Facts

Smith sued Samson alleging that Samson breached its duty to act as a reasonably prudent operator by failing to drill wells on their gas leases. During the course of discovery, a dispute

2

arose regarding Smith's Request for Production No. 11, which sought the production of "all documents that describe the nature and/or extent of the Proved Producing Oil and Gas Reserves that [Samson] or any other person has estimated exist on the Hancock-Smith Unit . . . includ[ing] any calculations, study, analysis and/or reports with respect to such reserves."

Samson argued that the documents sought by Request No. 11 were trade secrets and refused to produce them.[1] Samson's privilege log and production/privilege log assert that several specific documents are trade secrets and that several dozen categories of documents are also trade secrets.

However, in response to the discovery requests, Samson produced an analysis regarding "Proved Developed Producing" reserves in the Hancock-Smith Unit (Reserve Analysis).[2] Smith argued that by producing the Reserve Analysis, Samson had waived its trade secret privilege as to any information regarding other reserves, specifically any information regarding "proven undeveloped reserves" in the Hancock-Smith Unit.

In June 2010, Samson moved to "snap-back" the Reserve Analysis documents under Rule 193.3(d), alleging they were inadvertently produced trade secrets, and sought to have them returned via court-order. *See* TEX. R. CIV. P. 193.3(d). Samson argued it was not aware of the disclosure until April 27, 2010. In response, Smith produced correspondence indicating that Samson knew of the production in September 2009.

---

[1]Smith does not dispute that Samson filed a proper production/privilege log.

[2]The documents are labeled SAM-02976 through SAM-02981.

3

The trial court agreed with Smith, denied Samson's snap-back motion, overruled Samson's objections and assertions of trade secret privilege to Request No. 11, found that Samson waived the trade secret privilege by producing the Reserve Analysis, and ordered Samson to produce "all documents responsive to" the request for production.   Samson sought mandamus relief.

## II.      Mandamus

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal.   *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).   When determining whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed.   *Colonial Pipeline*, 968 S.W.2d at 941.   The rules governing discovery do not require as a prerequisite to discovery that the information sought be admissible evidence; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence.   *See* TEX. R. CIV. P. 192.3(a).   But this broad grant is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information.   *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).

Appellate courts will not intervene to control incidental trial court rulings when an adequate remedy by appeal exists.   *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex.

4

2004) (orig. proceeding); *Walker*, 827 S.W.2d at 840.   A party will not have an adequate remedy by appeal (1) when the appellate court would not be able to cure the trial court's discovery error, (2) when the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error, or (3) when the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the record.   *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); *Walker*, 827 S.W.2d at 843.   A trial court abuses its discretion and no adequate remedy by appeal exists when a trial court erroneously compels production of trade secrets without a showing that the information is "necessary."   *In re Bass*, 113 S.W.3d 735, 738, 745 (Tex. 2003) (orig. proceeding).

### A.    There is Evidence that Samson Actually Discovered the Production of the Reserve Analysis in September 2009

Samson filed the snap-back motion on June 2, 2010, and argued that it first learned of the production on April 27, 2010.   Smith contends that its correspondence with Samson shows that Samson knew of the production in September 2009, and therefore the snap-back motion is untimely.   In denying Samson's snap-back motion, the trial court found that Samson "did not invoke Rule 193.3(d) within 10 days of actually learning that the [Reserve Analysis] documents were produced."

Under Rule 193.3(d), a party who inadvertently produced privileged information does not waive privilege as to that information if, within ten days after the producing party actually

5

discovers that such production was made, the producing party amends the response, identifying the material or information produced and stating the privilege asserted. TEX. R. CIV. P. 193.3(d). If the response is amended to identify the specific information inadvertently produced and assert a privilege, the requesting party must promptly return the specified materials. *Id.*

The issue here is the approximate date Samson actually discovered that it produced the Reserve Analysis. In a letter dated September 23, 2009, regarding an upcoming discovery conference between the parties, Smith informed Samson:

> As you know, Samson produced reserve analysis found on pages SAM-02976 through SAM-02981. We are interested in receiving this same report or form of analysis, if any exist, for "proven undeveloped reserves" associated with the Hancock-Smith Unit.

In a response letter dated September 30, 2009, Samson acknowledged receipt of the September 23 letter and stood on its previously asserted objections and claims of privilege, but made no mention of the Reserve Analysis. More than eight months later, in June 2010, Samson filed its snap-back motion, claiming that the Reserve Analysis was privileged and that "Samson first learned that [the Reserve Analysis documents] were inadvertently produced on April 27, 2010."

Samson argues that the September 23 letter "did not put Samson on notice that a[] privileged document had been produced." Smith contends that the September 23 letter put Samson on notice and that Samson failed to amend its response, assert privilege as to the Reserve Analysis, or change its position in any way regarding the Reserve Analysis until several months later.

6

The plain language of the September 23, 2009, letter informs Samson that it produced the Reserve Analysis and Samson admitted receiving the letter. Parties are charged with notice of the contents of correspondence they receive. *Burlington N. R.R. Co. v. Akpan*, 943 S.W.2d 48, 51 (Tex. App.—Fort Worth 1997, no writ) (party held to have knowledge of material fact contained in document he admitted receiving); *see also Hexter v. Pratt*, 10 S.W.2d 692, 693 (Tex. Comm'n App. 1928, judgm't adopted), *quoted with approval in Champlin Oil & Ref. Co. v. Chastain*, 403 S.W.2d 376, 388–89 (Tex. 1965); *see also Hicks v. Loveless*, 714 S.W.2d 30, 33 (Tex. App.—Dallas 1986, writ ref'd n.r.e); *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 293 (Tex. App.—Austin 1983, writ ref'd n.r.e). Samson fails to cite any authority negating its knowledge of the letter's contents. Therefore, the trial court acted within its discretion when it denied Samson's snap-back motion because it had ample evidence from which to reasonably infer that Samson actually discovered the inadvertent production in September 2009.

**B.      The Order Does Not Specify Which Documents Are Responsive to Request No. 11**

Samson refused to produce documents in response to Request No. 11, claiming that they were trade secrets. The trial court overruled all of Samson's assertions of trade secret privilege and ordered Samson to produce "all documents responsive to this request."

To be entitled to mandamus relief, the relator must demonstrate (1) that no other adequate remedy at law exists, and (2) under the law and facts relevant to the case, the act sought to be compelled is purely ministerial. *In re Rodriguez*, 77 S.W.3d 459, 460 (Tex. App.—Corpus

7

Christi 2002, orig. proceeding). "An act is ministerial if it does not involve the exercise of any discretion." *Id.* (quoting *State ex rel. Hill v. Court of Appeal Fifth Dist.*, 34 S.W.3d 924, 927 (Tex. Crim. App. 2001). It must also be "clear and indisputable" that the relator has an absolute right to relief sought. *Id.* at 461. A ministerial act is one that must be performed with such certainty it does not require the exercise of judicial discretion. *Id.*

Because the order fails to specify which documents are responsive to Request No. 11, we are unable to determine whether the trial court's order required the production of documents subject to the trade secret privilege. Further, the general nature of the order does not allow us to consider whether the trade secret issue was properly preserved, proven, or rebutted as to the "responsive" documents.

The order is overbroad and indefinite and therefore constitutes an abuse of discretion.

We conditionally grant the petition for writ of mandamus and direct the trial court to vacate the order in question and enter a new order identifying in detail the material and information to be produced, in a manner that will enable petitioner to properly comply. Because we are confident the trial court will comply with this mandate, the writ will issue only if the court fails to do so.

Jack Carter
Justice

Date Submitted:    August 2, 2010
Date Decided:      August 3, 2010

8